**ROY HERIDER FEED COMPANY, Appellant,**

v.

**MODERN FEEDS OF NACOGDOCHES, INC., Appellee.**

No. 550.

Court of Civil Appeals of Texas, Tyler.

May 20, 1971.

Rehearing Denied June 24, 1971.

Fulbright, Crooker, Freeman, Bates & Jaworski, Thomas R. McDade, William H. Young, Houston, Fairchild, Hunt & Price, Billy Hunt, Center, for appellant.

Renfrow, Zeleskey, Cornelius, Rogers & Berry, James R. Cornelius, Jr., Lufkin, for appellee; William Sheehy, Lufkin, of counsel.

McKAY, Justice.

This is a summary judgment case. Appellee, Modern Feeds of Nacogdoches, Inc. (hereinafter called Modern Feeds), brought suit against appellant, Roy Herider Feed Company (hereinafter called Herider), to require Herider to transfer to Modern Feeds all of the stock owned by Herider in Poultry Packers of Texas, Inc. (hereinafter called Poultry Packers). The trial court granted in part Modern Feeds' motion for summary judgment after finding that Herider made an unconditional offer to sell its stock in Poultry Packers, and that Modern Feeds accepted such offer. The partial summary judgment recited that as of June 30, 1969, Modern Feeds was the owner of all the stock of Poultry Packers which had been owned by Herider, but that the consideration to be paid to Herider would be determined upon trial of that phase of the case. Thereafter, by stipulation, the parties agreed, for purposes of this litigation only, upon the consideration to be paid in the event Herider is required by final judgment to sell and transfer its stock in Poultry Packers to Modern Feeds. Thereupon, the Court entered a final judgment that Modern Feeds was the owner of the stock as set out in the partial summary judgment, and that Herider should be paid $112,372.00 as the purchase price of the stock.

Herider filed a motion for new trial and an amended motion for new trial, and a hearing was had on such amended motion. Testimony was heard on the new trial hearing and is brought up with the record; however, we are of the opinion that we cannot consider testimony given on the motion for new trial and designated "Statement of Facts." Notice of appeal was given by Herider in the order overruling its motion for new trial.

On December 13, 1966, Herider and Modern Feeds together owned all the stock of Poultry Packers, and on such date entered into an agreement [1] that if either became

1. (Material parts)—"1. In the event that either the said Roy Herider Feed Company or Modern Feeds of Nacogdoches, Inc., shall become dissatisfied with the manner in which the business of Poultry Packers of Texas, Inc., is being conducted, for any reason, such party so dissatisfied shall, by written notice delivered to the other, state the fact of such dissatisfaction and a price, to be paid in cash, at which it is willing to sell to the other all of the common stock in Poultry Packers of Texas, Inc., owned by it, or which it is willing to pay for all of the common stock in Poultry Packers of Texas, Inc., owned by the party to which such notice is delivered.

"2. Upon receipt of such written notice, the party to which such notice is delivered shall, within 90 days thereafter, notify the party giving such notice whether it, the party receiving the no-

dissatisfied, such dissatisfied party should in writing notify the other party of such dissatisfaction and set a price at which it was willing to sell or to pay for all of such stock owned by the other party, and the party receiving such notice would have ninety days in which to notify the party giving such notice whether receiving party desired to buy the stock of the notifying party or to sell its own stock at such proposed price.

On April 1, 1969, Herider, through its President, wrote the following letter to Modern Feeds:

Mr. Bob Dewitt
Modern Feed of Nacogdoches, Inc.
P. O. Box 865
Nacogdoches, Texas

Dear Bob:

In accordance with our verbal discussions and the Buy-R-Sell option noted in paragraphs 1 and 2 of our mutual agreement dated December 13, 1966, I hereby offer to buy all of the common stock of Poultry Packers of Texas, Inc., P. O. Box 1391, Lufkin, Texas, for a sum of $100,000.00.

I wish to note, however, that certain matters would need to be negotiated before the purchase or sale can be finalized. These negotiations would include such items as an acceptable resolution of matters concerning the marketing of poultry, the quantity of poultry to be put into the plant, the price, and the terms of payment for poultry. Arrangements will also have to be made in regard to assuming the responsibility for all the indebtedness of Poultry Packers of Texas, Inc. A satisfactory transfer of the Bar-

ker equipment and the Frick Ice Machine leases will also need to be finalized.

Bob, this offer is not meant to reflect on either you or Ben personally. It is strictly a business proposition. I feel I must have full ownership of a facility for me to do the things that I think need to be accomplished.

Very truly yours,

HERIDER FEED COMPANY

/s/ Roy

E. L. (Roy) Herider
President

On April 11, 1969, Modern Feeds, through its President, wrote Herider:

Mr. E. L. (Roy) Herider
P. O. Box 271
Center, Texas

Dear Mr. Herider:

I acknowledge receipt of your letter of April 1. I assume you mean you offer to buy all of our stock or sell all of your stock in Poultry Packers of Texas, Incorporated.

We are sorry you feel you have to make this move, but sometimes these things are necessary.

I would like to have you write me your ideas concerning your second paragraph.

I believe our association in this plant has been good for both of us. I appreciate the work you have done in behalf of the plant.

Sincerely yours,

Bob DeWitt
President

tice mentioned above, will purchase the stock of the party giving the notice, or sell its stock to the party giving the notice. Within 90 days after exercising the option to buy or sell, described in

Paragraph No. 1 above, the party to purchase the stock of the other shall pay to such other party the stated price in cash and accept transfer of all such shares of stock owned by the other."

On April 14, 1969, Herider wrote Modern Feeds:

Mr. Bob DeWitt
DeWitt's Texas Hatchery
P. O. Box 865
Nacogdoches, Texas

Dear Bob:

Thank you for your letter of acknowledgment.

To further clarify my letter of April 1, I hereby agree to buy all of the capitol stock owned by you in Poultry Packers of Texas, Inc. or sell you all of the capitol stock owned by me in Poultry Packers of Texas, Inc. for a sum of $100,000.00, such price to be adjusted upward or downward for the net income or loss after income taxes from March 31, 1969 to the end of the week immediately prior to the closing of the sale.

As to further explanation in paragraph 2 of my letter of April 1, I think these things should be negotiated in a conference between your people and mine.

If you wish to hold this conference prior to the 90 days stipulated in our contract, I will be happy to do so.

Very truly yours,

/s/ E. Herider

E. L. (Roy) Herider

On May 14, 1969, Modern Feeds wrote Herider:

Roy Herider
Roy Herider Feed Company
P. O. Box 271
Center, Texas 75935

Hello Roy:

In accordance with our Buy-or-Sell agreement I exercise our option and will buy your stock in Poultry Packers of Texas, Inc. for $100,000 in cash; plus the division of profits as outlined in your letter of April 14, 1969. We will pay you in cash before the end of the 90 day period.

Sincerely yours,

Bob DeWitt
President

On May 16, 1969, Herider wrote Modern Feeds:

Mr. Bob DeWitt
DeWitt's Texas Hatchery
P. O. Box 865
Nacogdoches, Texas

Dear Bob:

In answer to your letter of May 14th, your letter does not in any way meet the requirements specified in my letters of April 1st and April 14th. It is my decision, after discussion yesterday, that no suitable arrangement can be made that would cause me to relinquish my interest in Poultry Packers.

Since your attempted acceptance of the proposition I made actually amounted to an acceptance of only a part of it, it is my understanding that this amounts to a rejection of my proposition and the making of a counter proposal. I therefore withdraw my letters of April 1st and April 14th in which I outlined my willingness under certain circumstances. These letters were strictly for negotiable purposes which it is now evident that this is not possible. I am hopeful that this does not affect our relationship in operating Poultry Packers.

Very truly yours,

E. L. (Roy) Herider

Attached to the answer of Herider to Modern Feeds' motion for summary judgment was the affidavit of E. L. (Roy) Herider, President of Herider, that he and R. E. DeWitt, President of Modern Feeds, had three actual negotiating sessions between April 1, 1969 and May 14, 1969, and that DeWitt assured him on several occasions that the matters requiring negotiation

had been arranged, but that they never were able to actually reach any understanding which would make it possible for him to sell his stock. In the affidavit, Herider said one of the matters of concern was his personal obligation to the Frick Company for an ice making machine, which he leased to Poultry Packers at his cost after leasing it from Frick. His affidavit further stated that when he learned in the early part of May 1969 that DeWitt was negotiating with other companies for a supply of live poultry for processing, he broke off negotiations because he had been led to believe that his poultry would be purchased by the plant after the stock was sold, and this is where the matter stood when DeWitt wrote the Modern Feeds letter of May 14, 1969.

In a second affidavit, E. L. (Roy) Herider says that during the three negotiating sessions he had with DeWitt, they went into various aspects of the matter and when they discussed the problems which would have to be solved if Herider should sell its stock, DeWitt told him that there would be no trouble in protecting Herider in regard to the matters requiring negotiation. He further said that he checked with the Frick Company and found it had not agreed to release him from liability, and that he learned he was unable to obtain guaranty of prompt payment for poultry he might sell to Poultry Packers, and since these matters were not resolved, negotiations were finally broken off.

Appellant Herider brings this appeal on three points:

(1) The trial court erred in holding as a matter of law an unconditional offer to sell stock was made by Herider and accepted by Modern Feeds;

(2) The trial court erred in holding that as a matter of law, the parties had entered into a binding contract requiring Herider to sell its stock to Modern Feeds; and that

(3) There was a disputed fact issue.

The burden of proving that there is no genuine issue of any material fact is upon the movant, and all doubts as to the existence of a genuine issue as to a material fact must be resolved against the party moving for summary judgment. Gulbenkian v. Penn, 151 Tex. 412, 252 S.W.2d 929 (1952). In other words, the evidence must be viewed in the light most favorable to the party opposing the motion. All conflicts in the evidence are disregarded, and the evidence which tends to support the position of the party opposing the motion is accepted as true. Great American Reserve Insurance Co. v. San Antonio Plumbing Supply Co., 391 S.W.2d 41 (Tex.1965); Gulbenkian v. Penn, supra.

It is noted that the language of the partial summary judgment is that the Court *"is of the opinion that the following material facts exist without substantial controversy"* [2], and following that are six findings to the effect (1) that Herider invoked the "buy-or-sell" agreement by his letters of April 1 and April 14, 1969; (2) that such letters put upon Modern Feeds the duty of electing whether to buy or sell; (3) that Modern Feeds made the election to buy; (4) that Herider was obliged to sell; (5) that Herider refused to sell; and (6) that Modern Feeds placed into the Registry of the Court $100,000.00, plus $9,636.46 which it admits to be the additional sum due for corporate earnings.

After the stipulation by both parties that the correct amount of corporate earnings through June 30, 1969 to be tendered to Herider was $12,372.00, the Court entered a final judgment, and the language of the first paragraph refers to the partial summary judgment *"which is hereby referred to and adopted herein the same as if set forth in haec verba herein."*

The language of Rule 166-A, Texas Rules of Civil Procedure, section (d), titled "Case Not Fully Adjudicated on Motion" is that when judgment is not rendered on the whole case or all the relief asked for is not

2. Emphasis ours, unless otherwise indicated.

granted, the Court *"shall if practicable ascertain what material facts exist without substantial controversy* and what material facts are actually and in good faith controverted" and enter an order so finding.

The language of Rule 166–A(c) in part is: "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that, except as to the amount of damages, *there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."*

The partial summary judgment used the language of the rule in section (d): "what material facts exist without substantial controversy," and the final judgment adopted the partial summary judgment "as if set forth in haec verba herein." When the judgment was made final, there was no change in the language: "without substantial controversy," and consequently there was no express or direct finding that there was no genuine issue as to any material fact. This is significant only if "without substantial controversy" and "no genuine issue of material fact" in the same rule do not have the same meaning. The question is not whether the summary judgent proof raises fact issues as to the essential elements of a plaintiff's claim or cause of action, but whether the summary judgment proof establishes as a matter of law that there is no genuine issue of fact as to one or more of the essential elements of plaintiff's cause of action. Gibbs v. General Motors Corporation, 450 S.W.2d 827 (Tex.1970). The granting of a summary judgment should be done only if the record establishes a right thereto as a matter of law. Gibbs v. General Motors Corporation, supra.

We hold that the summary judgment proof does not establish as a matter of law that there is no genuine issue of fact as to an essential element of Modern Feeds' cause of action. Herider's first letter, of April 1, 1969, says that "certain matters would need to be negotiated before the purchase or sale can be finalized." The letter then named matters concerning the marketing of poultry—the quantity of poultry, the price, and the terms of payment. Modern Feeds asked for "your ideas concerning your second paragraph" in its letter of April 11, 1969. Herider wrote again on April 14, 1969 and re-stated its offer to Modern Feeds, and in paragraph 2 wrote "as to further explanation in paragraph 2 of my letter of April 1, I think that these things should be negotiated in a conference between your people and mine." It was one month later when DeWitt of Modern Feeds wrote that the option to buy was exercised. According to Herider's two affidavits, Herider and DeWitt negotiated between April 1, 1969 and May 14, 1969 on the matters named in Herider's letters, and these conferences would be some indication that Modern Feeds, through DeWitt, likely considered the matters in negotiation as conditions precedent to completing the "buy-or-sell" agreement. If that were true, there would have been no meeting of the minds and there would have been no unconditional offer made which could be accepted by Modern Feeds to ripen into a binding contract. The "buy-or-sell" agreement did not prohibit a conditional offer. We do not believe that the language: "If you wish to hold this conference prior to the 90 days stipulated in our contract, I will be happy to do so" in Herider's April 14, 1969 letter changes the offer into an unconditional offer because the conditional matters to be negotiated were referred to in the same letter.

It is our conclusion that this series of letters does not establish a concluded contract. To say they did establish a contract, the letters must be taken together and construed as an integral whole and the result must show that the point reached in the negotiations where the parties understood each other and that the terms proposed by one were acceded to by the other. Ray v. Blue, 173 S.W.2d 258 (Tex.Civ. App., Eastland, 1943, writ ref., w. o. m.);

**560**

National Furniture Manufacturing Company v. Center Plywood Company, 405 S.W.2d 115 (Tex.Civ.App., Tyler, 1966, writ dism.). The old case of Patton v. Rucker, 29 Tex. 402, at page 409, says "acceptance of a proposal to sell, in order to bind the maker of the proposition and conclude the contract, must be unconditional and unqualified. The exact terms of the proposition, without addition or variation, must be acceded to before the proposition is withdrawn; otherwise, the maker of the proposition is not bound by the acceptance."

For the reasons set out, we conclude that the summary judgment for Modern Feeds must be reversed and the cause remanded.

Reversed and remanded.