**Richard M. JONES, Appellant,**

v.

**W. E. RILEY et al., Appellees.**

No. 17236.

Court of Civil Appeals of Texas, Fort Worth.

Sept. 24, 1971.

Rehearing Denied Oct. 22, 1971.

Davis, Callaway & Marshall, and Clyde M. Marshall, Jr., Fort Worth, for appellant.

Simon & Simon, and Henry W. Simon, Sr., and John W. Hughes, Fort Worth, for appellees.

## OPINION

BREWSTER, Justice.

The plaintiffs, W. E. Riley and Richard E. Bloomfield, sued Richard M. Jones, defendant, for (1) $50,000 actual and $100,000 exemplary damages that they claimed resulted from many fraudulent misrepresentations allegedly made to them by defendant to induce them to enter into a real estate transaction that they were all involved in; (2) for specific performance of a provision contained in an option agreement whereby the three agreed that if the two plaintiffs did exercise the option therein granted to them by Jones (which they did later do) and did purchase a ⅓ interest each from Jones in the realty involved and thereafter a bona fide offer was made by someone to buy such property and one or more of the three owners desired to sell to such prospective purchaser and the other owner or owners desired not to sell, and declined to sell for as long as 30 days after receiving notice of the offer, that the declining owner or owners would be obligated to buy the interests of those desiring to sell on the basis of the same selling price as was contained in the offer. In this connection it was alleged that Kimbell, Inc., made a bona fide offer after plaintiffs became owners of ⅓ each of the land and that plaintiffs desired to sell and notified the other owner, Jones, of the offer and he declined for more than 30 days to sell and has also declined to comply with the provision in the option agreement to buy their interests. Plaintiffs also sued (3) for ⅔ of an allegedly secret profit plaintiffs claimed defendant made out of the transaction with them. The recovery of this last item was sought on the theory that the two plaintiffs and the defendant had entered into an agreement to be partners and/or joint venturers in the acquisition of the tract of land involved and that by reason thereof a fiduciary relationship existed between plaintiffs and defendant and defendant breached such relationship by retaining to the exclusion of plaintiffs a secret profit out of the transaction.

Following a long trial before a jury judgment was rendered as follows: Jones was ordered to specifically perform the provision in the option agreement relative to buying the ⅔ interest in the land that

was owned by plaintiffs and provided the means by which such specific performance was to be accomplished. In addition the judgment awarded plaintiffs a money judgment for another $14,666.67 on the theory that Jones made a $22,000 secret profit out of the deal and that ⅔ of it belonged to plaintiffs because of the fiduciary relationship that the court found to exist between these parties. The plaintiffs were not allowed a recovery of damages on the feature involving the alleged fraudulent misrepresentations in view of the fact that defendant got a jury verdict on that phase of the case.

The defendant, Jones, has appealed, urging 55 points of error.

The following undisputed facts were proved at the trial: the 10.1354 acre tract involved in the suit was, prior to July, 1968, the property of Mr. and Mrs. Walter P. Camp, Jr.; in June or July, 1968, Jones started negotiating with the Camps for the purchase of this land and the Camps agreed to sell this land to Jones for $175,000, payable $35,000 in cash and the balance of $140,000 by a note secured by a lien against the property; however, Jones never did sign the written agreement with the Camps agreeing to buy their land until July 11, 1968; at the time Jones started negotiating with the Camps for the purchase of this property he did not know either of the plaintiffs; Jones made inquiry of a banker as to someone he might get to invest in the purchase of this land and as a result of this inquiry he met the plaintiff, Bloomfield, who was a realtor and the brother-in-law of the other plaintiff, Riley; Jones and Bloomfield first met in either June or July, 1968, and during such meeting they inspected the land together; they met on another occasion after that but did not then make a contract; on July 9, 1968, the two plaintiffs, Bloomfield and Riley, with their attorney, E. C. Pannell, met the defendant, Jones, and his attorney, Bob Maddox, in the latter's office for the purpose of drafting a written agreement to evidence the agreement reached between the two plaintiffs and the defendant, Jones, relative to this tract of land; July 9, 1968, at the lawyer's office, was the first time Jones and Riley ever met; this written agreement was dictated jointly by lawyers Maddox and Pannell, in the presence of the plaintiffs and of the defendant; on July 11, 1968, the transaction whereby Jones purchased the land from the Camps was closed in the Fort Worth office of Rattikin Title Company; the two plaintiffs and the defendant, Jones, were all present at this closing and at that time these three parties executed the option agreement that lawyers Pannell and Maddox had dictated in their presence in Maddox's office on July 9, 1968; this option agreement is in words and figures as follows, with the exception of its Exhibit A which is here omitted:

"THE STATE OF TEXAS ⎫ KNOW ALL MEN BY
"COUNTY OF TARRANT ⎰ THESE PRESENTS:

"THIS CONTRACT entered into this 11th day of July, 1968, by and between RICHARD M. JONES, of Fort Worth, Tarrant County, Texas, hereinafter called VENDOR, and W. E. RILEY and RICHARD E. BLOOMFIELD, each of Fort Worth, Tarrant County, Texas, hereinafter called purchasers,

#### "WITNESSETH:

"That VENDOR does hereby give and grant to PURCHASERS an exclusive option to purchase an undivided two-thirds interest in and to all that certain tract or parcel of land located and situated in the J. Thornhill Survey, Tarrant County, Texas, comprising 10.135 acres of land, more or less, in the City of Fort Worth, Tarrant County, Texas, all as more particularly described in Exhibit 'A' attached hereto and made a part and parcel of this contract for all purposes to the same extent as if said description were set out herein word for word.

"That the consideration to be paid by PURCHASERS to VENDOR shall be the sum of Ten Dollars ($10.00) cash in hand

paid, and other good and valuable considerations as hereinafter set forth, the receipt and sufficiency of which is hereby acknowledged by VENDOR.

"This option, subject to all of the terms and conditions herein set forth, shall extend from the date of the execution hereof for a period of ten (10) years, but may not be exercised by PURCHASERS until after the lapse of seven (7) months from the date hereof, and PURCHASERS may exercise this option by notifying VENDOR in writing at his address at 1908 West Lotus Street in the City of Fort Worth, Tarrant County, Texas, of their desire to exercise the same, such notice to be by letter or telegram and to be made at any time within said ten (10) year period.

"In the event PURCHASERS exercise said option herein granted, then and in such event, it is agreed between the parties that the total consideration to be paid by PURCHASERS to VENDOR shall be the sum of Twenty-Five Thousand Dollars ($25,000) in cash, plus interest on said sum at the rate of 8% per annum, beginning one year from this date, and the assumption and agreement to pay an undivided two-thirds of the balance of principal and interest due and owing in accordance with the face and tenor of two notes; one note in the original principal sum of One Hundred Forty Thousand Dollars ($140,000), secured by a first and superior lien on the hereinabove described property, and the second note in the original principal sum of Sixty Thousand Dollars ($60,000), secured by a lien second and inferior only to the above described lien, with each of said notes representing a portion of the original purchase price expended by VENDOR. Said notes to be assumed and the dates thereof being more particularly described in warranty deed from Walter P. Camp, Jr. and wife, Bobbie Camp, to Richard M. Jones, recorded in Volume _____, Page _____, Deed Records of Tarrant County, Texas, reference to which deed and the record thereof

is hereby made for a more particular description of said notes to be assumed. In addition to the payment of Twenty-Five Thousand Dollars ($25,000) in cash, plus interest, and the assumption of two-thirds of the balance of principal and interest due and owing on the aforesaid two notes, PURCHASERS agree to reimburse VENDOR a sum equal to two-thirds of the actual expenses paid by VENDOR on ad valorem taxes or assessments accruing against the subject property, principal and interest payments made on the two vendor's lien notes, cost of surveys, and title expenses previously paid by VENDOR in acquiring the subject property or which may accrue prior to the date of the exercising of this option by PURCHASERS.

"VENDOR shall within twenty (20) days from the receipt of written notice of the exercise of the option by PURCHASERS, deliver to PURCHASERS an insured title policy insuring a good and marketable title in PURCHASERS, together with a good and sufficient warranty deed vesting an undivided two-thirds interest to the subject property in PURCHASERS, subject to the liens securing the two notes above described.

"It is further understood by and between VENDOR and PURCHASERS that in the event PURCHASERS exercise the option herein granted, the parties hereto bind and obligate themselves to thereafter work together in the utilization and sale of the subject property to the best interest of all parties.

"Subsequent to the date of the exercise of the option herein granted by PURCHASERS and prior to a sale to third parties of the subject property, VENDOR shall have the right to lease and receive all rental income accruing from improvements on the subject property. Any lease to incorporate a ninety (90) day termination clause by lessor. It is further understood that VENDOR shall, at his sole expense and cost, maintain the improvements on the subject property during such period of time.

"VENDOR and PURCHASERS further agree that in the event one of the parties desires to sell the subject property to a bona fide purchaser and the remaining parties do not want to convey their interest for the sum of the bona fide offer, then and in such event the declining parties shall, within thirty (30) days after the receipt of notice of such bona fide offer, purchase the interest of the party desiring to sell for the same sum and on the same terms as the bona fide offer received. In this connection, each of the parties hereto agree that they will timely notify the other of the terms of any and all bona fide offers received for the subject property.

"It is understood and agreed between VENDOR and PURCHASERS that should PURCHASERS exercise the option herein granted, that the two-thirds interest in the subject property to be conveyed shall be conveyed by VENDOR subject to each of the two lien indebtednesses against the subject property, and it is the intention of the parties hereto that such conveyance shall not work a merger of the lien of PURCHASER W. E. Riley with the fee simple title, and such lien shall continue thereafter in full force and effect against the subject property to secure the second lien note.

"The foregoing sets forth the entire agreement between the parties hereto, and all prior agreements, written or oral, are either merged herein or rescinded, and all of the covenants and agreements set forth herein shall inure to the benefit of the parties hereto, their heirs, legal representatives or assigns, and shall survive the exercising of this option agreement.

"EXECUTED in triplicate originals this the day and year first above written.

"/s/ Richard M. Jones
"Richard M. Jones
        "VENDOR
"/s/ W. E. Riley
"W. E. Riley
"/s/ Richard E. Bloomfield
"Richard E. Bloomfield

"PURCHASERS"

Also undisputed were the following facts: Riley and Bloomfield participated in the transaction when the Camps and Jones closed their sale and purchase deal on July 11, 1968; in this transaction Riley advanced Jones $60,000 and to evidence the transaction Jones gave Riley a $60,000 note secured by a second lien against the property, and Jones also granted Riley and Bloomfield at that time a written option (above set out) whereby they could later, if they elected to do so, each buy a ⅓ interest in the property from Jones based on a price of $225,000 for the entire property; later, in March, 1969, Bloomfield and Riley notified defendant, Jones, that they elected to exercise the option to purchase and Riley paid Jones the $25,000 cash consideration called for in the option agreement to be paid if the option to purchase was exercised; this last transaction was not closed until August 12, 1969, at which time Jones delivered to plaintiffs a title policy and a deed conveying to plaintiffs ⅔ of the property; pursuant to the option contract the deed provided that each plaintiff assume ⅓ each of the $140,000 Camp note and Riley released his lien securing his $60,000 note and Jones and Bloomfield in lieu thereof, executed a new note to Riley for $40,000, secured by a lien against the property; on September 23, 1969, the plaintiffs instituted this suit against Jones.

We can simplify matters somewhat by discussing the three features of this case separately.

1. *The claim for damages resulting from fraudulent misrepresentations.*

In their trial petition the plaintiffs alleged that Jones made many false representations to them that induced them to enter into the real estate transaction and they sought the recovery of both actual and exemplary damages by reason thereof. The trial court's judgment properly did not award plaintiffs any recovery on this feature of the case because the jury found one or more of the essential elements

of fraud against the plaintiffs in connection with each of said representations. In other words, the jury returned a verdict in favor of the defendant, Jones, on this feature of the case and as a result thereof Jones was entitled to a judgment in his favor as to it. No question is raised on the appeal about that feature of the case.

## 2. The specific performance phase.

The buy or sell provision which the trial court's judgment sought to specifically enforce was contained in the July 11, 1969, option agreement. That same option agreement granted the plaintiffs an option to buy the land in question for a consideration of $25,000 in cash plus the assumption of ⅔ of a total indebtedness against the property of $200,000. Before suit plaintiffs exercised their option and furnished the consideration provided for in the agreement. Jones then conveyed them ⅔ of the land.

At the time Jones closed his deal purchasing the property from the Camps and entered into the option contract with Bloomfield and Riley on July 11, 1968, Riley advanced $60,000 for which Jones gave him a promissory note and a lien against the land to secure the note. In that closing transaction $35,000 of the proceeds of this $60,000 that Riley advanced was used by Jones to pay the Camps the cash consideration that Jones had agreed to pay them in connection with his purchase of the land from them; $22,000 of the proceeds of this $60,000 loan was paid by the title company at the closing directly to the defendant, Jones. Riley and Bloomfield have contended throughout the trial that they did not know that Jones got this $22,000 out of the deal, that he thus derived a secret profit from it, and that since they were partners and/or joint venturers at that time with defendant, Jones, that they were entitled to recover ⅔ of this $22,000 from Jones. They convinced the trial court that their contentions were correct and the $14,666.67 item of recovery provided for in the judgment represents a recovery of ⅔ of this particular $22,000 item.

Defendant, Jones, contends in his first point that the trial court erred in decreeing specific performance of the buy-sell provision in the option agreement because such relief is not available to these plaintiffs since they have refused to affirm the agreement and have continuously sought damages inconsistent with the other terms of the option contract.

We sustain this point.

It is apparent that the judgment awarding the two plaintiffs ⅔ of this $22,000 (the $14,666.67 item of recovery) results in reducing the purchase price that plaintiffs had in the option agreement agreed to pay defendant, Jones, for a ⅔ interest in the land by the sum of $14,666.67. This is true because this $22,000 item which plaintiffs claim to constitute the secret profit was a part of the proceeds of the $60,000 note that Jones executed in favor of Riley on July 11, 1968. This $60,000 note was secured by a lien against the land in question and constitutes a part of the $200,000 indebtedness against said land which the plaintiffs expressly agreed in the option agreement to assume and pay ⅔ of in the event they later exercised their option to buy a ⅔ interest in the land.

If plaintiffs are allowed a recovery of ⅔ of this $22,000 item ($14,666.67) it would result in destroying the agreement that plaintiffs and defendant, Jones, had made as to the purchase price that Jones would sell them a ⅔ interest in the land for. Such a decree would abrogate and set aside their agreement that Jones would sell them a ⅔ interest in the tract for $25,000 in cash, plus their assumption and agreement to pay ⅔ of the outstanding $200,000 indebtedness against such land. The judgment would make a new contract for those parties whereby Jones would be compelled to sell plaintiffs' ⅔ of the land for the consideration that plaintiffs had in the option contract agreed to pay Jones for such ⅔ interest, less $14,666.67.

The rule of law that controls a disposition of this point is stated in 4 Pomeroy's Equity Jurisprudence (Fifth Edition), Sec.

1407, as follows: "The doctrine is fundamental that either of the parties seeking a specific performance against the other must show, as a condition precedent to his obtaining the remedy, that he has done or offered to do, or is then ready and willing to do, all the essential and material acts required of him by the agreement *at the time of commencing the suit*, and also that he is ready and willing to do all such acts as shall be required of *him* in the specific execution of the contract according to its terms." (Emphasis ours.)

The Supreme Court of Texas in Roberts v. Lovejoy (1860), 25 Tex.Supp. 437, 441 (part of Texas Reports) had before it a case very similar to this one and said the following about it:

"Nothing can be more clearly settled, than that a court of equity will not decree the specific performance of a contract in favor of a party who refuses performance in the whole or in part. The plaintiff had refused to pay a portion of the purchase-money. It makes no difference that his refusal was sanctioned by the judgment of the justice; it was none the less a disaffirmance of the contract on his part, and released the other party from his obligation to perform. A party who seeks the specific performance of a contract must have performed, or must show a readiness to perform, the very contract in terms of which he seeks performance. He cannot disaffirm it in part and at the same time hold the other party to the whole of his undertaking. The court will not aid him to have performance of the contract when he rejects any part of it. That would be to make for the parties a new contract, to which they had not given their assent. Courts of equity do not modify or change the contracts of parties to suit their own sense of what would be equitable and just in the premises, but leave them to make their own contracts. It may be that the defendant would never have entered into the contract which the plaintiff now seeks to enforce against him; that is, a contract to convey his right to the land in question for a sum considerably less than that for which he stipulated as the consideration for the transfer."

In that case the plaintiff had refused to pay a part of the purchase money. The only difference between the facts of that case and the one here is that in this case, although plaintiffs have heretofore paid the purchase price agreed upon in the option agreement, they have from the beginning and have throughout the entire trial sought in this suit to recover back a part of such purchase price. In other words plaintiffs seek on the one hand to force specific performance on Jones' part of the terms of the option agreement that relate to him, and on the other hand they seek to disaffirm the part of the same contract that provides the amount of consideration they had to pay for ⅔ of the tract when they later exercised their option. The judgment rendered and here complained of actually achieves that result for the plaintiffs. One part of it compels defendant, Jones, to specifically perform the buy-sell provision of the option contract according to its terms. Another part of the judgment relieves the plaintiffs from performing their part of the agreement in that it in effect rebates to them $14,666.67 of the purchase price for the land that was agreed upon in the option agreement. This judgment thus in effect rewrote the contract for the parties by decreeing that Jones must sell ⅔ of the land involved to the plaintiffs for a price equal to $14,666.67 less than the price the plaintiffs in the option contract had agreed to pay for such land.

It is well settled in Texas that a party cannot himself disaffirm a part of a contract and at the same time enforce specific performance on the part of the other party. See Rutherford v. Nichols, 253 S.W.2d 306 (Eastland Civ.App., 1952, ref., n. r. e.); Burr v. Greenland, 356 S.W.2d 370 (El Paso Civ.App., 1962, ref., n. r. e.); Casey v. Jones, 189 S.W.2d 515 (Waco Civ.App., 1945, ref., w. o. m.);

and 52 T.J.2d 598, Sec. 60, Specific Performance.

■ The undisputed evidence in this case shows that plaintiffs have sought from the beginning and do now seek to disaffirm a part of the same option contract that contains the buy-sell agreement sought to be specifically enforced. Such evidence also shows that plaintiffs are not now and were not at the time of commencing suit and have never been ready and willing to do all the acts required of them in carrying out the contract according to its terms.

With the record in this state the court erred in refusing to instruct a verdict for defendant on this specific performance phase of the case and erred in decreeing specific performance of the buy-sell agreement contained in the option agreement.

By appellant's second and third points he contends that the court erred in decreeing specific performance by him of the buy-sell provision of the option contract because the undisputed evidence shows that the offer of Kimbell, Inc., to buy was conditional and there was no proof offered to show that the conditions were ever met. He says these are additional reasons why the specific performance phase of the case should be reversed and rendered in his favor.

The evidence shows that about December 9, 1969, one Bob Scott, an officer of Kimbell, Inc., wrote appellee Bloomfield the following letter:

"KIMBELL Inc.

"December 9, 1969

"Mr. Gene Bloomfield
"Bloomfield Realty Company, Inc.
"3700 East Berry Street
"Fort Worth, Texas

"Dear Mr. Bloomfield:

"It is our understanding that you have a tract of land consisting of 10.1354 acres as indicated in the John Thornhill Survey Abstract No. 1514, located at 5054 South Freeway. The tract includes a small drive-in restaurant and two other small frame buildings. I also understand from a discussion with a member of our staff here at Kimbell, that there is a $126,000 note at 7% interest on this property.

"In the event you are interested in selling this property, we are willing to take this $126,000 note and pay you an additional $95,000 for this property. This offer is, of course, contingent on verification of the details of the loan and verification of the extent and facts concerning the property title.

"If you are interested in this, please contact me at the Kimbell General Office, 1929 South Main Street, Telephone 924-3271, extension 57.

"Sincerely,
/s/ "Bob F. Scott
"Bob F. Scott

"BFS/dc

"1929 South Main Street    P. O. Box 1540
Fort Worth, Texas, 76101

"817-924-3271"

The offer contained in that letter is the one relied on by plaintiffs as constituting the "bona fide offer" called for by the buy-sell provision of the option contract. They contended throughout the trial that because defendant, Jones, did not accept that offer and agree to sell the land to Kimbell, Inc., within the 30 days specified in the option contract that appellees were entitled to judgment requiring appellant to specifically perform the buy-sell provision of the option contract by buying their ⅔ interest in the tract of land involved on the basis of the sale price contained in such offer. The basis for the court granting the specific performance phase of the judgment was this Kimbell offer.

■ We hold that in order for this Kimbell, Inc. offer to constitute a "bona

fide offer" within the meaning of that phrase as contained in the buy-sell provision of the option contract that such offer had to not only be made in good faith, but it had to also be of such a nature and in such form that it could be, by an acceptance thereof by the offeree, caused to ripen into a valid and binding contract that could be enforced by any party to it.

To come within the meaning of the phrase "bona fide offer" the offer would have to be one that was legally valid.

The Kimbell, Inc. offer above set out is expressly made conditional or contingent on a later verification by Kimbell, Inc., of the details of the loan and on their verification of the extent and facts concerning the property title.

The following is from 13 Tex.Jur.2d 131, Contracts, Sec. 15: " * * * an offer that will result in a contract on acceptance must be one that is intended to create a legal relation when accepted. A binding contract will not arise from the acceptance of a mere offer or invitation to enter into negotiations, * * * an offer must be certain and unambiguous, * * *. Without certainty * * * there can be no meeting of the minds, and, * * * no agreement between the parties."

The following is from Williston on Contracts, Third Edition, Vol. 1, Sec. 43: "One of the commonest kinds of promises too indefinite for legal enforcement is where the promisor retains an unlimited right to decide later the nature or extent of his performance. This unlimited choice in effect destroys the promise and makes it merely illusory."

We hold that the Kimbell offer was no more than an offer or invitation to enter into negotiations. It did not legally constitute such an offer that, if accepted, a binding contract would thereupon result. The conditions or contingencies that were therein contained placed it within Kimbell's power to thereafter decide, after a later investigation, whether or not the details of the loan and extent and facts concerning the property title were satisfactory to Kimbell and whether or not they would then agree to be bound by contract.

For example, assume that Kimbell, Inc., determined, after acceptance of the offer, through a later investigation, that the amount of the loan payments were not as they understood or wanted them or that the loan was not for as long a term as they had understood it was or desired it to be. We are convinced that the conditions or contingencies placed in the offer would result in Kimbell, Inc., not being bound by contract to buy the land in such an event, if they chose not to be bound. On this see Roy Herider Feed Co. v. Modern Feeds of Nacogdoches, 468 S.W.2d 554 (Tyler Civ.App., 1971).

The effect of such conditions or contingencies is to destroy the offer contained in the letter. They result in making the offer in the letter too indefinite to be legally enforced.

For the reasons stated, we hold that as a matter of law the Kimbell, Inc., letter did not constitute a "bona fide offer" within the meaning of the buy-sell provision of the option contract.

We sustain appellant's second and third points. These are additional reasons along with those set out in our discussion of appellant's point of error No. 1 for reversing the part of the judgment that relates to the specific performance phase of the case and for rendering judgment on that part of the case for the appellant Jones.

In his argument under his points of error 1 through 5, inclusive, appellant advances another reason why he says the Kimbell, Inc. offer was invalid and therefore insufficient to constitute a bona fide offer within the meaning of the option contract.

For some reason appellant did not see fit to advance the proposition in a point of error. He does fully argue and brief the matter.

Jones' contention referred to is that the letter in which the Kimbell, Inc. offer is made does not contain a sufficient legal description of the land involved to meet the requirements of the Statute of Frauds (Art. 3995, Vernon's Ann.Tex.Civ.St.) and therefore could not constitute a bona fide offer within the meaning of the option contract.

We are convinced that the appellant's contention is correct and that the description of the land as contained in the letter offer is not sufficient to meet the requirements of the Statute of Frauds and that for that reason it was legally invalid and an unenforceable offer. See Wilson v. Fisher, 144 Tex. 53, 188 S.W.2d 150 (1945); Matney v. Odom, 147 Tex. 26, 210 S.W.2d 980 (1948); Rowson v. Rowson, 154 Tex. 216, 275 S.W.2d 468 (1955); Shelton v. Allen, 407 S.W.2d 832 (Waco Civ.App., 1966, ref., n. r. e.); and Ball v. Parks, 313 S.W.2d 134 (Fort Worth Civ. App., 1958, ref., n. r. e.).

The case of Gohlke v. Davis, 279 S.W.2d 369 (San Antonio Civ.App., 1955, no writ hist.) holds that where neither the written offer nor the written acceptance thereof described the land involved in a manner sufficient to meet the requirements of the Statute of Frauds that they are both invalid and void.

The matter discussed is advanced by appellant as another reason why the specific performance phase of the case should be reversed and rendered in his favor. As heretofore indicated our conclusion is that we should reverse and render this phase of the case for reasons other than the one being discussed so it is not necessary for us to decide here whether or not the appellant lost this point by failing to have a point of error on it, or whether or not his argument and authorities on the point was sufficient to preserve the point for him. See statement on this in Lott v. Lott, 370 S.W. 2d 463 (Tex.Sup., 1963).

*3. The phase of the case relating to a recovery from Jones of ⅔ of a claimed secret profit (the $14,666.67 item).*

The undisputed evidence showed that on the occasion when Jones completed the purchase of the land from the Camps in the Rattikin Title Company office on July 11, 1968, that Riley advanced $60,000 to Jones; $35,000 of this sum was paid at the closing to the Camps to take care of the cash amount Jones had agreed to pay them for the land; $22,000 of this fund was disbursed at the closing by the title company directly to Jones. The disbursement of the other $3,000 is not material here. To evidence this transaction between Riley and Jones, the latter executed, payable to Riley, a $60,000 note which was secured by a second lien against the land. The occasion referred to is the same one at which these parties executed the written option agreement, the advance of the $60,000 by Riley being a part of the consideration for the giving by Jones of the option to the plaintiffs. Bloomfield and Riley contended that they did not know Jones got this $22,000 sum; that there was a fiduciary relationship existing between the plaintiffs and Jones because they were either partners or joint enterprisers in connection with the acquisition of the land; that Jones breached the fiduciary relationship between the parties by getting and keeping this alleged secret profit of $22,000 on July 11, 1968, and that they were entitled to recover ⅔ of that sum by reason of those facts. The judgment appealed from did award the plaintiffs a recovery from Jones of ⅔ of this $22,000 item, which amounted to $14,-666.67.

A. Jones attacks this part of the judgment by point 6, saying such recovery is contradictory of the written agreement of the parties made July 11, 1968, and therefore prohibited by the parol evidence rule. He claims that the trial court erred in rendering judgment for that item and in overruling his motion for instructed verdict based on that ground.

We sustain this point.

Paragraph III of plaintiff's trial petition (2nd amended) alleged in substance the following concerning the time the alleged partnership and/or joint venture were formed: Jones proposed to plaintiffs that they form a partnership and/or joint venture to acquire this land and hold it for profit; said profit would be divided ⅓ each to Jones, Riley and Bloomfield and that each of them would be proportionately liable for the deferred payments on the purchase price; that plaintiffs agreed to the terms of the proposal and the parties thereupon formed the partnership and/or joint venture with defendant, Jones. Although no date was specifically alleged as to when this agreement was claimed to have been made, this time was fixed as being prior to July 11, 1968, by plaintiffs further allegation that one term of the partnership and/or joint venture agreement was to the effect that the plaintiff, Riley, agreed to provide the part of the purchase price that was paid in cash to the Camps for the property.

The undisputed evidence is to the effect that this cash payment on the purchase price was put up by Riley and paid to the Camps on July 11, 1968, at the time the Camps closed their deal with Jones. This cash payment was made with a part of the $60,000 advanced by Riley to Jones at that closing.

The effect of these allegations then are that the claimed partnership and/or joint venture agreement made by the parties was entered into prior to the time the parties to this suit signed the written option agreement on July 11, 1968.

Also, the breach of the fiduciary relationship is claimed by plaintiffs to have occurred when Jones was paid the $22,000 in cash on July 11, 1968, at the closing of his purchase of the land from the Camps. It was claimed by plaintiffs that this fiduciary relationship between plaintiffs and Jones by virtue of their being partners and/or joint venturers existed between these parties on July 11, 1968, at the time he was paid the $22,000 in cash and that Jones breached the relationship by receiving the sum on that date and secretly keeping it for himself.

On this point the plaintiff, Bloomfield, testified that the partnership between plaintiffs and defendant was formed at the time Riley agreed to put up the $60,000 down payment. He agreed prior to July 11, 1968, to do this.

We hold that as a matter of law under the record in this case no fiduciary relationship existed between Jones and the plaintiffs on July 11, 1968, at the time Jones was paid the $22,000 in question. The written contract between these parties, the substance of which is set out above, expressly provided that the writing set forth the entire agreement of the parties, and that all prior agreements of any kind are either merged therein or rescinded. Nothing was mentioned therein about the parties being partners or joint venturers.

The jury verdict established that the written option contract was not procured through fraud and no contention was made that any agreement relative to joint venture or partnership was omitted therefrom because of fraud, accident or mistake.

The parol evidence rule therefore prevents this written option agreement from being modified, varied, or contradicted by parol evidence of prior or contemporaneous oral agreements or negotiations between these parties. Super-Cold Southwest Co. v. Elkins, 140 Tex. 48, 166 S.W.2d 97 (1942); Hubacek v. Ennis State Bank, 159 Tex. 576, 317 S.W.2d 30 (1958); Howeth v. Davenport, 311 S.W.2d 480 (San Antonio Civ.App., 1958, ref., n. r. e.); and see 23 Tex.Jur.2d 500, Evidence, Sec. 342, for a great number of similar holdings.

The following is from the opinion in the Super-Cold Southwest Co. v. Elkins case, supra, 166 S.W.2d at p. 98: "In that case this Court held that proof of oral representations and warranties made prior to the execution of the written contract, and not

embodied therein, was inadmissible. This is necessarily the law, for otherwise a party could destroy the value of a written contract by the mere proof of contemporaneous parol agreements. The very purpose of putting the agreement in writing is to definitely settle its terms and to exclude all oral understandings to the contrary. The alleged oral warranty that the refrigerator would work satisfactorily, and that if it did not the vendor would rescind the contract, is in direct conflict with the written instrument, wherein it was provided that there were no warranties, either express or implied, other than those set out in the written instrument."

Also applicable here is the rule that when parties to an agreement finally enter into a writing to express the terms of their contract, the presumption is that all prior promises and agreements relating to the transaction have been merged into and are fully expressed by the written instrument. Natural Gas Distributing Corporation v. Williams, 355 S.W.2d 194 (Waco Civ.App., 1962, ref., n. r. e.); Davis v. Andrews, 361 S.W.2d 419 (Dallas Civ.App., 1962, ref., n. r. e.); and Jones v. Chester, 363 S.W.2d 150 (Austin Civ.App., 1962, ref., n. r. e.). (This is true in the absence of evidence to show that such prior agreement was omitted from the writing because of fraud, accident or mistake. No such contention was involved in this case.)

One phase of this lawsuit was a suit for damages alleged to have resulted from fraudulent representations claimed to have been made by Jones. The jury verdict on this phase of the case was in favor of defendant, Jones, but because this was involved, it did result in a great deal of parol evidence getting into the record that would not otherwise have been admissible.

But even if some parol evidence did get into the record relative to prior or contemporaneous inconsistent oral agreements and as to prior negotiations of the parties, such evidence cannot be now considered as some legal evidence on the question of whether or not the parties entered into a partnership or joint venture relative to acquiring this tract of land. This is true because the Parol Evidence Rule is a rule of substantive law, and not a mere rule of evidence. Hubacek v. Ennis State Bank, supra.

If the parties had agreed to form a joint venture relative to acquiring this tract of land, such agreement went out of the picture and became unenforceable when it was not carried forward into the option contract. The option agreement signed by the parties expressly provided that "the entire agreement between the parties hereto, and all prior agreements, written or oral, are either merged herein or rescinded, * * *." The purpose of provisions such as that is to prevent claims from being made of oral understandings such as are being made here.

The written option agreement of the parties did not create either a joint venture or a partnership. Its provisions actually negative such a relationship. The same thing is true of the $60,000 note and mortgage that Jones gave Riley on July 11, 1968, when Riley put the $60,000 into the deal.

So at the time the entire transaction of July 11, 1968, occurred (consisting of the closing between Jones and the Camps, the advancing of the $60,000 from Riley to Jones, for which Jones gave Riley a note and mortgage, and of the execution by the parties here of the option agreement) no fiduciary relationship existed between Jones and the plaintiffs, by reason of their being partners or joint venturers.

The entire basis of the part of the judgment awarding the recovery to plaintiffs of the $14,666.67 item was the contention that the parties were joint venturers and/or partners relative to the acquisition and holding of the land and that by reason thereof a fiduciary relationship existed between them at the time Jones was paid the $22,000 item on July 11, 1968.

As a matter of law these parties were neither joint venturers or partners relative to this tract of land at that time. It follows that no fiduciary relationship existed between them at that time and that the court erred in awarding the plaintiffs a recovery of this $14,666.67 item.

We here reverse this part of the judgment and here render judgment that plaintiff take nothing by virtue of this phase of the case for the reasons just stated. Additional reasons for reversing and rendering this part of the trial court's judgment are set out below.

B. Appellant's ninth point is that the court erred in awarding plaintiffs a recovery of the $14,666.67 item on the theory of a joint enterprise and secret profit in defendant's acquisition of title to the property in suit, because they are estopped to recover such relief by reason of the knowledge of their attorney, E. C. Pannell, on the occasion of the closing of the transaction with the Camps in which the alleged secret profit of $22,000 was paid to Jones.

The undisputed evidence shows that attorney E. C. Pannell, was employed by the plaintiffs to help them negotiate the contract with Jones and to represent them in the Jones-Camp closing in connection with which Riley advanced to Jones the $60,000 on July 11, 1968. It was also undisputed that E. C. Pannell, their attorney at the closing, knew that $175,000 was the price Jones was paying the Camps for the land and that Jones was receiving the $22,000 in cash at the closing from a disbursement of the Riley loan. Mr. Pannell, the plaintiffs' attorney, knew these things prior to the time the deal was concluded on July 11, 1968. The plaintiffs had contended that Jones told them the price being paid the Camps was $225,000.

One basis of allowing plaintiffs a recovery of this item was that it was a secret profit that Jones made out of the deal and kept in violation of the fiduciary relationship that existed between the parties.

The jury found in answer to Issue 15 that neither Bloomfield nor Riley personally knew that Jones got and kept $22,000 for his own benefit out of the $60,000 that Riley put up and advanced to Jones at the closing on July 11, 1968.

However, this finding mattered not, because the undisputed evidence showed that plaintiffs' attorney, while acting within the course of his employment for plaintiffs, acquired knowledge of these matters before the plaintiffs closed their deal.

" * * * knowledge of or notice to the attorney, acquired during the existence of the relation of attorney and client, and while acting within the scope of his authority, is imputed to the client." 7 Tex. Jur.2d 78, Attorneys at Law, Sec. 38.

See also Hexter v. Pratt, 283 S.W. 653 (Dallas Civ.App., 1926, aff. in Tex. Com.App., 10 S.W.2d 692); and Green v. A. R. Clark Investment Company, 363 S.W. 2d 802 (Fort Worth Civ.App., 1962, rev. on other grounds in Tex., 375 S.W.2d 425).

In the last cited case in the Court of Civil Appeals opinion at page 813 the court said: "We * * * hold that the knowledge on the part of plaintiffs' attorney amounted to knowledge and notice as a matter of law on the part of plaintiffs themselves."

We hold in this case that the knowledge of plaintiffs' attorney, E. C. Pannell, acquired in the course of his employment for plaintiffs, that Jones was to receive personally $22,000 out of the $60,000 that Riley advanced at the closing was in law the knowledge of plaintiffs themselves. Such knowledge was imputed to plaintiffs as a matter of law.

With this knowledge imputed to them by law the plaintiffs went ahead and closed the entire transaction by advancing to Jones the money and entering into the option contract with him, and by taking from Jones the $60,000 note and mortgage to secure same. Under such circumstances they are estopped from recovering from Jones ⅔

of such amount on the grounds that it was a secret profit that Jones made without their knowledge by breaching a fiduciary relationship.

For this reason also the court erred in rendering judgment for the plaintiffs for a recovery of this $14,666.67 item. The trial court should have instructed a verdict for Jones on this item because of these facts and for this reason also we are required to render judgment for defendant on this phase of the case.

■ C. By appellant's Point 11 he contends that the trail court erred in finding in its judgment in support of its award of this $14,666.67 item to plaintiffs that a fiduciary relationship existed on July 11, 1968, between plaintiffs and defendant because the undisputed evidence is otherwise.

We sustain this point.

The legal relationship that existed between plaintiffs and defendant on July 11, 1968, was the one that was created by the written option agreement they signed on that date and by the $60,000 note and mortgage. No fiduciary relationship was thereby created between these parties.

Since there was no fiduciary relationship to be breached by Jones, the court erred in awarding the plaintiffs a recovery of this item and in not instructing a verdict for Jones as to this phase of the case.

We have not discussed some of appellant's 55 points of error because our rulings on the points that we have hereinabove referred to control the disposition of the entire case. Such other points are now immaterial.

The trial court's entire judgment is here reversed and judgment in the entire case is here rendered that the plaintiffs take nothing by their suit.

The costs in the case are taxed against the plaintiffs.