Peter W. BALDWIN, Appellant,

v.

Manfred E. NEW, a/k/a Fritz New, Appellee.

No. 05–86–01028–CV.

Court of Appeals of Texas, Dallas.

June 24, 1987.

Rehearing Denied Aug. 4, 1987.

George W. Bramblett, Jr., W. Alan Wright, Dallas, for appellee.

Carol Stephenson, Jo Bess Jackson, Dallas, for appellant.

Before ENOCH, C.J., and DEVANY and MCCRAW, JJ.

DEVANY, Justice.

This is an appeal from a suit on a contract between two former partners in a real estate development company. Peter W. Baldwin, Fritz New, and O. Ike Harris were partners in the Baldwin-Harris Company from 1974 until 1982. Following negotiations which began in 1982, New, Baldwin and Harris reached an agreement that New would withdraw from the partnership ("the Agreement"), giving up his ten percent interest in exchange for certain real properties, cash, and other consideration.

Subsequently, the parties entered into another agreement ("the March 24 Letter"), which is the basis of this lawsuit. Under that March 24 Letter, the parties provided that an adjustment in equities would be accomplished through one piece of real property, the Wylain Building, that had been conveyed to New. In the March 24 Letter, the partners agreed that, if New received an "offer to purchase" the building within eighteen months of the Agreement, he would either sell the building under the resulting contract, or make payment to Peter Baldwin for the sum of money to which Baldwin would have been entitled under the equity adjustment terms had the Wylain Building been sold.

Baldwin presented three "offers" to New within the eighteen months, which New refused to accept because of his contention that they were not "offers to purchase" within the meaning of the March 24 Letter. Since no offers to purchase were presented, New contended that there were no sale proceeds from which to pay Baldwin the specified portion under the March 24 Letter. Baldwin sued for breach of contract, and moved for partial summary judgment. The trial court denied Baldwin's motion for partial summary judgment. New then moved for summary judgment, contending that he had no obligation to Baldwin because Baldwin had not presented any "offers to purchase" within the eighteen month period. The trial court granted summary judgment for New on the ground that the "offers" were not "offers to purchase", but simply options to purchase because the proposals gave each buyer a sixty-day "free look" at the property and, if the buyer was not interested in purchasing the property, there would be no sale. In this appeal by Baldwin, he presents twelve points of error, contending that the trial court erred in denying his motion for partial summary judgment, and in granting New's motion for summary judgment, essentially because the "contracts of sale" rejected by New were not mere options, but "offers to purchase" within the meaning of the March 24 Letter. Because we find no merit to Baldwin's arguments, we affirm the judgment of the trial court.

The March 24 Letter signed by New and Baldwin concerning the Wylain Building provides in pertinent part:

If an offer ("Offer") to purchase the Wylain Building is received by [New] or Peter W. Baldwin, within eighteen months of the consummation of the transaction described in the Agreement and further provided: (a) that such offer provides for a purchase price of $2,124,784.00, or more, above the balance of the existing mortgage (as of the date of con-

summation of the transaction described in the Agreement) and (b) such offer is acceptable to Peter W. Baldwin, Fritz New shall be bound and obligated to either:

> (i) sell the Wylain Building on the terms and conditions set forth in the Offer; or

> (ii) make payment to Peter W. Baldwin of the monies Baldwin would have received pursuant to Paragraph 2 below had the Wylain Building actually been sold pursuant to the Offer, on the same terms and in the same manner.

On three separate occasions within the eighteen-month period, Baldwin submitted three proposals to New in connection with the March 24 Letter concerning the sale of the Wylain Building. The first proposal was for less than the amount required by the March 24 Letter. The second and third proposals were for sufficient amounts, but contained two conditions that were unacceptable to New. The first condition read as follows:

> Upon execution of this contract by all parties, Purchaser shall have a period of sixty (60) days from the date this contract is executed to perform engineering and feasibility studies acceptable to Purchaser *in his sole discretion....* At or prior to the end of said sixty (60) day period, Purchaser shall do one of the following:
>
> A. Send written notice to Seller that the property is unacceptable to Purchaser in the exercise of his *sole discretion,* in which event this contract shall automatically terminate and neither Purchaser nor Seller shall have any further liability or responsibility hereunder; or
>
> B. Deposit with the title company, as earnest money, a Letter of Credit in the amount of TWENTY–FIVE THOUSAND DOLLARS AND NO/100 ($25,000.00).

(Emphasis added.)

Even if the prospective buyer decided to deposit the earnest money with the title company after his "free look", New still objected to the second condition in the proposals, which provided:

> If Purchaser shall fail to consummate this Contract for any reason, except Seller's default or the termination of this Contract pursuant to a right to terminate given herein, *Seller shall have the right to have the Earnest Money paid to Seller as liquidated damages for the breach of this Contract, as Seller's sole remedy.*

(Emphasis added.)

■ In order to properly address Baldwin's arguments, we will first address his third and fourth points of error. In these points, Baldwin argues that the trial court erred in finding that the proposals in question were options, because they would form binding contracts upon the buyer, since a promise conditional on personal satisfaction can form the basis of an enforceable contract. We agree that a promise conditional on personal satisfaction can form the basis of an enforceable contract under proper conditions. *Black Lake Pipe Line Company v. Union Construction Company,* 538 S.W.2d 80, 88 (Tex.1976). However, we disagree with Baldwin's contention that the proposals in this case are not mere options. The proposals provided that the buyer was to have sixty days to examine the property and obtain engineering studies. At the end of the sixty days, the buyer could, *in his sole discretion,* decide not to buy the property. The seller would have *no remedy* at all against him at this point. The proposals, therefore, were not offers, which, upon acceptance, created a binding contract enforceable by both parties. *See Lede v. Aycock,* 630 S.W.2d 669, 674 (Tex.Civ.App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.).

Baldwin argues, however, that the promise is not illusory because the buyer would have a duty to exercise good faith in performing the engineering and feasibility studies. In support of this argument, he cites *Rhodessa Development Co. v. Simpson,* 658 S.W.2d 218 (Tex.App.—El Paso 1983, no writ). In that case, a real estate contract provided that the contract was contingent upon the occurrence of a zoning change on the premises. The buyer in *Rhodessa* argued that the contract did

not create an obligation on its part to use due diligence to procure the zoning change. On appeal, the El Paso court held that the contract contained an implied obligation on the buyer to use due diligence to obtain the zoning change. 658 S.W.2d at 221.

We are not persuaded that the proposal in the instant case contained an implied provision such as the one in *Rhodessa*. The proposal presented by Baldwin was a true "free look" contract. The buyer could tie up the building for sixty days with total discretion to avoid the sale. If, at the end of the sixty days, the buyer decided not to go through with the sale, the seller had no remedy. As we stated earlier, the proposals presented by Baldwin were, therefore, not offers which, upon acceptance by New, became binding contracts. *Lede*, 630 S.W.2d at 674.

■ Furthermore, even if the buyer did decide to buy the building and put down his earnest money at the end of the sixty-day "free look" period, the proposal was still only a mere *option* to purchase because of the second condition contained in the proposals: if the buyer defaulted, the seller's sole remedy would be limited to retention of the earnest money. This court considered a similar provision in *Hott v. Pearcy/Christon, Inc.*, 663 S.W.2d 851 (Tex. App.—Dallas 1983, writ ref'd n.r.e.). In that case, the court stated:

> While generally the mutual promise to buy and sell are sufficient to create a binding contract to convey land, they are not sufficient *when the buyer's liability is limited to forfeiture of his earnest money. The effect of limiting liability results in an option to purchase.*

663 S.W.2d at 853. The proposals presented by Baldwin both contained the provision which limited the seller's remedy to retention of the earnest money. Therefore, under *Hott*, the proposals were *options* to purchase, rather than offers. 663 S.W.2d at 853. Baldwin's third and fourth points of error are overruled.

We now return to Baldwin's first and second points of error. In these points, Baldwin complains that the trial court erred in denying his motion for partial summary judgment and in granting New's motion for summary judgment because the proposals presented by Baldwin were not mere options and, if the buyers did decide to deposit the earnest money, the limitation in each instance on the seller's remedy was not mandatory. We find these arguments without merit. The provision in the contract providing for the seller's remedy is clear. The contract provides that "[i]f Purchaser shall fail to consummate this Contract for any reason, ... Seller shall have the right to have the Earnest Money paid to Seller as liquidated damages for breach of this Contract, *as Seller's sole remedy.*" (Emphasis added.) We hold that this language is clear and unambiguous. New's sole remedy is retention of the earnest money; he could not enforce the contract. Therefore, even at the second stage where the buyer could deposit the earnest money, the proposal would still be only an option because of the mandatory provision limiting the seller's remedy to retention of $25,-000 on a multi-million dollar sale.

■ Baldwin insists, however, that the above-quoted words in each proposal are *not* a mandatory limitation of the seller's remedy. In support of this argument, he cites *Gala Homes v. Fritz*, 393 S.W.2d 409 (Tex.Civ.App.—Waco 1965, writ ref'd n.r. e.). In *Gala*, the court considered a similar provision to that contained in the proposals rejected by New. There, the court noted that the contract stated that the down payment *"shall* be construed as liquidated damages" and that the seller *"shall* be entitled to retain" the down payment upon the default of the buyer. 393 S.W.2d at 410 (emphasis added). However, we note that the contract in *Gala* did not include the phrase "as the Seller's sole remedy." In the instant case, it is clear that retention of the earnest money was to be the seller's *sole remedy*, and that it was mandatory. Therefore, the proposals were mere options. *See Hott*, 663 S.W.2d at 853. We overrule Baldwin's first and second points of error.

In his fifth point of error, Baldwin contends that the trial court erred in using the plain meaning rule to determine that the

term "offer to purchase" in the March 24 Letter was unambiguous, rather than using the established rules of contract construction. In his sixth point of error, Baldwin argues that the trial court erred in concluding that the term "offer to purchase" was unambiguous on the ground that it referred only to the specialized meaning urged by New, since the term is not reasonably susceptible to such a restrictive construction. In his seventh and eighth points of error, Baldwin contends that the trial court erred in concluding that the contract term "offer to purchase" was unambiguous, because (1) under established rules of contract construction the term is at least reasonably susceptible to the meaning urged by Baldwin and (2) the evidence raised a genuine issue of fact as to whether the parties used the term to include contracts such as those rejected by New. We disagree with all of these contentions.

Each of these points have to do with the legal meaning of the phrase "offer to purchase." The central issue in this case is whether the proposals presented by Baldwin were "offers to purchase" within the meaning of the March 24 Letter. In order to answer that question, however, we must first determine whether the language in the contract is ambiguous. If the contract is ambiguous, then the surrounding circumstances may be considered in determining the meaning. However, if the contract is not ambiguous, then a party's construction is immaterial. *Sun Oil Company (Delaware) v. Madeley*, 626 S.W.2d 726, 732 (Tex.1981). As the supreme court stated in *Sun Oil:*

> If a written contract is so worded that it can be given a certain or definite legal meaning or interpretation, it is not ambiguous. It follows that parol evidence is not admissible to render a contract ambiguous, *which on its face, is capable of being given a definite certain legal meaning.* This rule obtains even to the extent of prohibiting proof of circumstances surrounding the transaction when the instrument involved, by its terms, plainly and clearly discloses the intention of the parties, or is so worded

that it is not fairly susceptible of more than one legal meaning or construction. 626 S.W.2d at 732, *quoting Lewis v. East Texas Finance Company,* 136 Tex. 149, 146 S.W.2d 977, 980 (1941) (emphasis added). The meaning of the word "offer" in Texas law is clear. An offer results in a binding contract upon acceptance by the other party according to its terms. *Fail v. Lee,* 535 S.W.2d 203, 208 (Tex.Civ.App.—Fort Worth 1976, no writ). Where an "offer" is so indefinite that it is impossible for a court to decide just what it means and to fix exactly the legal liability of the parties, its acceptance cannot result in an enforceable agreement; furthermore, an invitation to enter into negotiations is not an "offer" which, together with an acceptance thereof, forms a "contract." *Morrow v. De Vitt,* 160 S.W.2d 977, 983 (Tex.Civ.App.—Amarillo 1942, writ ref'd w.o.m.). A bona fide offer is one made in good faith which, on acceptance, becomes a valid and binding contract *enforceable by any party to it. Lede v. Aycock,* 630 S.W.2d 669, 674 (Tex.App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.), citing *Jones v. Riley,* 471 S.W.2d 650 (Tex.Civ.App.—Fort Worth 1971, writ ref'd n.r.e.).

█ We have already determined that the proposal in the instant case is a mere buyer's *option* to purchase. *Hott,* 663 S.W.2d at 853. Therefore, it cannot be an offer which, on acceptance, becomes a valid and binding contract *enforceable by any party to it.* While an option agreement is a contract between the parties, until the option is exercised, the contract is said to be unilateral in nature. *Tye v. Apperson,* 689 S.W.2d 320, 323 (Tex.App.—Fort Worth 1985, writ ref'd n.r.e.). Baldwin's proposals to New were, therefore, proposals of unilateral contracts, under which New alone would be bound. Only when an option is exercised by the buyer in accordance with the terms of the contract, does it then become a binding *bi*lateral contract. *Tye,* 689 S.W.2d at 323.

The power to make the contract binding, then, would be in the buyer's hands, rather than in New's hands. If New accepted Baldwin's proposals, a binding *bi*lateral

contract would not result from that acceptance. The buyers in each instance could enforce the contract against New, but New could not enforce either contract against the buyer. We are persuaded that the term "offer to purchase" does not mean a mere proposal for a unilateral contract such as the one in the instant case. Rather, the phrase "offer to purchase," within the context of the March 24 Letter, clearly contemplates that the offer be bona fide. A bona fide offer is one that it is made in good faith, and *on acceptance, becomes a valid and binding contract enforceable by any party to it.* *Jones v. Riley,* 471 S.W.2d 650, 659 (Tex.Civ.App.—Fort Worth 1971, writ ref'd n.r.e.); *see also Lede,* 630 S.W.2d at 674. Therefore, since the contract had a certain and definite legal meaning, the evidence concerning the surrounding circumstances was not admissible. *Sun Oil,* 626 S.W.2d at 732. The trial court did not use the wrong method of contract construction, nor did it err in concluding that the contract was unambiguous. Baldwin's fifth, sixth, seventh, and eighth points of error are overruled.

■ In his ninth point of error, Baldwin claims that the trial court erred in granting judgment for New because the evidence raised a genuine issue of material fact as to whether the parties were operating under a mutual mistake of fact concerning the meaning of the term "offer to purchase." We disagree. We have already determined that the term "offer to purchase" has a definite legal meaning; and therefore, that any parol evidence of parties' construction of the term is inadmissible. Furthermore, when an agreement is unambiguous, the defense of mutual mistake as to the meaning of the terms used is unavailable as a matter of law. *See Volpe v. Schlobohm,* 614 S.W.2d 615, 618 (Tex. Civ.App.—Texarkana 1981, no writ). Baldwin's ninth point of error is overruled.

■ In his tenth, eleventh, and twelfth points of error, Baldwin contends that the trial court erred in granting summary judgment for New because (1) there was a constructive provision in the parties' agreement that neither party would prevent, hinder, or delay performance of the contract, and (2) New breached that provision by not accepting Baldwin's proposals. We are not persuaded by this argument. We have already held that Baldwin did not present any "offers to purchase" to New within the contractual period. Since the proposals that Baldwin presented were not "offers to purchase," New was not bound to accept them. New could not have hindered or delayed performance by refusing to accept something he had not agreed to accept. Under the terms of the March 24 Letter, options to purchase were not included within the meaning of the phrase "offer to purchase." Since the March 24 Letter was clear and unambiguous with respect to the term "offer to purchase," no implied covenant obligating New to enter into option agreements can be read into the agreement. The Texas Supreme Court has stated the rule in *Dancinger Oil & Refining Co. of Texas v. Powell,* 137 Tex. 484, 154 S.W.2d 632 (1941). In that case, the court held:

> An implied covenant must rest entirely on the presumed intention of the parties as gathered from the terms *as actually expressed in the written instrument itself,* and it must appear that it was so clearly within the contemplation of the parties that they deemed it unnecessary to express it, and therefore omitted to do so . . .

154 S.W.2d at 635 (emphasis added.) We hold that the March 24 Letter did not contain an implied provision whereby New covenanted to enter into *options* to purchase with Baldwin. Baldwin's tenth, eleventh, and twelfth points of error are overruled.

Affirmed.