**PASTURE RENOVATORS, L.L.C., Plaintiff,**

v.

**LAWSON CATTLE & EQUIPMENT, INC., Defendant.**

**No. SA–04–CA–1102–0G.**

United States District Court, W.D. Texas, San Antonio Division.

Feb. 24, 2006.

Barry Snell, Bayne, Snell & Krause, San Antonio, TX, for Plaintiff.

Peter Kelley Rusek, Sheehy, Lovelace & Mayfield, Waco, TX, for Defendant.

## OPINION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

GARCIA, District Judge.

Pasture Renovators, L.L.C. ("Pasture") and Lawson Cattle & Equipment, Inc. ("Lawson") each sell agricultural implements designed to aerate pasture soil. Pasture claims Lawson breached an alleged promise not to file suit against Pasture until the parties' attorneys conferred regarding whether Pasture's equipment was infringing on Lawson's patent or trademark. Pasture brought this suit for breach of contract and fraud. Lawson seeks summary judgment on Pasture's claims.[1]

---

1. Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23,

On November 17, 2003, Lawson's attorney, Paul Linder, sent a cease and desist letter to Pasture asserting trade dress violations and threatening to file suit. Pasture replied in a letter from its counsel, Charles Haymore, dated November 26, 2003, asking for the information on which Lawson based its claims and stating in part:

Please do not file suit. We want to resolve this properly without the cost and trouble of a lawsuit. If Pasture Renovators, LLC is violating Lawson's property rights they will cease the prohibited activity without the necessity of Lawson filing a lawsuit.

I trust you can provide us the additional information and guidance so that Pasture Renovators, LLC can stop any inapplicable activities without the necessity of a lawsuit.

Receiving no response from Lawson, Haymore called Linder on December 1, 2003. Linder told Haymore that he would contact his client and get back with Haymore, and that Lawson would not file suit until Linder and Haymore could confer and try to work out any problems. Haymore affidavit at 2. Haymore wrote a letter to Linder dated December 9 confirming the telephone conversation. The letter stated in part: "You told me that you have received my letter dated November 26, 2003, but had not had an opportunity to discuss it with your client. You assured me that you would contact me as soon as you had discussed it with your client and would not file suit until you had talked to me."

In a letter dated December 19, Haymore wrote Linder again, stating in part: "We have requested that you provide us with support for the claims contained in your letter of November 17, 2003 and further requested that you contact us to discuss an amicable solution to your concerns. We have received no response to our inquiries." Haymore stated that Pasture would construe Lawson's silence to mean that Lawson no longer objected to Pasture continuing to advertise and market its products and that Lawson had no further claims against it. Haymore concluded by stating, "I trust our understandings are correct and that we can go forward without further unnecessary legal costs." In a final telephone conversation on December 22, Linder told Haymore that Lawson would respond to his letter and that Lawson would be speaking to an intellectual property attorney and would get back in touch with specifics as to what Pasture needed to change to avoid infringement. Haymore affidavit at 2.

Without further communication from Lawson or Linder, Lawson sued Pasture in the United States District Court for the Middle District of Florida for trademark and trade dress infringement, false advertising, and unfair competition. That suit was subsequently dismissed for lack of in personam jurisdiction over Pasture.

The facts set out above are undisputed; it is their interpretation that is at issue.

### Contract.

 A cause of action for breach of contract requires proof of four elements: (1) a valid contract; (2) plaintiff performed or tendered performance; (3) defendant

---

106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). On a motion for summary judgment, a court must review the facts in the light most favorable to the non-movant. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Only factual

disputes "that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

breached the contract; and (4) plaintiff was damaged as a result. *McLaughlin, Inc. v. Northstar Drilling Techs., Inc.,* 138 S.W.3d 24, 27 (Tex.App.—San Antonio 2004, no pet.). A valid contract requires an offer and acceptance, supported by consideration. *Nickerson v. E.I.L. Instruments, Inc.,* 874 S.W.2d 936, 939 (Tex. App.—Houston [1st Dist.] 1994, writ denied).

■ In order for there to be an offer that may ripen into a contract by a simple acceptance, the offer must be reasonably definite in its terms and must sufficiently cover the essentials of the proposed transaction so that, with an expression of assent, there will be a completed and definite agreement on all essential details. *Texas Employers' Ins. Ass'n v. Moore,* 56 S.W.2d 652, 654 (Tex.Civ.App.—Waco 1932, writ ref'd); *Edmunds v. Houston Lighting & Power Co.,* 472 S.W.2d 797, 799 (Tex.Civ. App.—Houston [14th Dist.] 1971, writ ref'd n.r.e.). It is generally held that an offer to enter negotiations is not an offer capable of being accepted to form a binding contract. *Baldwin v. New,* 736 S.W.2d 148, 152 (Tex.App.—Dallas 1987, writ denied). *See also Morrow v. De Vitt,* 160 S.W.2d 977, 983 (Tex.Civ.App.—Amarillo 1942, writ ref'd w.o.m.) (an invitation to enter into negotiations is not an offer, which, if accepted, forms a contract).

■ The Court concludes that the exchanges between the parties' lawyers do not constitute a binding contract. Pasture's letters amounted to nothing more than an offer to negotiate a settlement of Lawson's claims against it; it was not an offer that, upon acceptance, could form a contract. Specific terms left for negotiation were the nature and extent of Lawson's property rights, and the nature and extent of Pasture's alleged infringing activities. Further, Linder made it clear that he had to consult with his client before he

could negotiate further with Haymore. In his last communication Linder stated that he would be consulting with an intellectual property attorney, which indicates that Lawson had made no decision regarding Pasture's infringement. Haymore's letters and conversations with Linder proposed no specific obligations to be undertaken by the parties other than to continue negotiations. *See Cohen Development Co. v. JMJ Properties, Inc.,* 317 F.3d 729 (7th Cir. 2003) (letter sent by an outlet-mall developer to a property development company did not constitute an offer to contract because the developer prefaced the letter with language more indicative of a willingness to bargain than an invitation to contract, stating that "I believe our best course of action would be to determine how to secure a longer term option without either of us losing our previously agreed upon development interests ...").

■ In sum, an offer to continue to negotiate to attempt to resolve a dispute is not one that can ripen into a contract upon acceptance. The Court finds that the parties did not enter into a contract.

### Fraud.

■ The Court is also of the opinion that Pasture cannot maintain a fraud action. Under Texas law the elements of fraud are (1) a material misrepresentation of a present existing fact, (2) that was false, (3) that was either known to be false when made or was asserted without knowledge of the truth, (4) that was intended to be acted upon, (5) that was relied upon, and (6) that caused injury. *Carnival Leisure Indus., Ltd. v. Aubin,* 53 F.3d 716, 718 (5th Cir.1995); *DeSantis v. Wackenhut Corp.,* 793 S.W.2d 670, 688 (Tex.1990).

■ Detrimental reliance is an essential element of a claim for fraud. *Federal Deposit Ins. Corp. v. Patel,* 46 F.3d 482,

486–87 (5th Cir.1995); *see also Jackson v. Speer*, 974 F.2d 676, 679 (5th Cir.1992) ("No fraud has been perpetrated until the claimant has acted in reliance upon false representations."). Similarly, the plaintiff must also prove that the alleged misrepresentation was the proximate cause of the damages that he or she is seeking to recover. *See, e.g., Ratner v. Sioux Natural Gas Corp.*, 770 F.2d 512, 519 (5th Cir.1985) ("To prevail on a common law fraud claim in Texas, one must show that a misrepresentation caused him injury."); *C & C Partners v. Sun Exploration and Prod. Co.*, 783 S.W.2d 707, 718–19 (Tex.App.—Dallas 1989, writ denied) ("There must be pleading and proof of a pecuniary loss suffered which is directly traceable to and which resulted from the false representation upon which the injured party relied.").

■ Even assuming that Lawson's promise to continue negotiations was made with the present intent not to perform, there is no evidence that Pasture did anything in reliance on Lawson's alleged promise. In fact, Haymore's letters indicate that Pasture continued to market its aerators as it had before the first communication from Lawson. In his December 19 letter, Haymore continued to contest Lawson's claims of infringement and stated that Pasture would construe Lawson's silence to mean that it no longer objected to Pasture *continuing* to advertise and market its products. Pasture promised only to cease infringing activity if Lawson provided evidence of infringement. *See* Letter of Nov. 26, 2003 at 2 (*"If* Pasture Renovators, LLC is violating Lawson's property rights *they will cease the prohibited activity* without the necessity of Lawson filing a lawsuit." (emphasis added)).[2] Put another way, Pasture did not surrender any right, substantially change its behavior in reliance on Lawton's alleged promise, or suffer any detriment as a result of its alleged reliance on the promise.

■ Pasture asserts that it was damaged when it was forced to defend Lawson's suit before the parties had a chance to further discuss Lawson's claims. However, these are costs Pasture would have faced anyway had negotiations continued and reached an impasse. Pasture contends that if Lawson had specified the basis for its infringement claims, Pasture would have changed its design to avoid violating Lawson's rights and would thereby have avoided any litigation expenses. It is not a given, however, that had Lawson specified its contentions Pasture would have readily agreed to modify the design of its implement. A promise to negotiate is certainly not a guarantee that a dispute will be resolved. Nor is it a guarantee that Pasture would modify its behavior in any manner Lawson demanded.

Lawson's motion for summary judgment (docket no. 22) is GRANTED. Pasture's claims are dismissed with prejudice.

■

---

2. *See also* Haymore affidavit at 2–3 (e.g., "All [Pasture] asked for was 'information and guidance' so that Pasture ... could stop any inappropriate activity." "I ... requested [Linder] to point out specifically the manner in which his client contended its rights were being violated, so that any offending practice could be terminated without litigation." "Pasture ... was prepared to take any action necessary to make sure that Lawson's rights were not being infringed.").