# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-20-00096-CV

---

**Jimmie Luecke Children Partnership, Ltd., a Texas Limited Partnership, Appellant**

**v.**

**Everhard Droemer, Dorchen Hoeinghaus, Bernard Droemer, Theodore Droemer, and Roberta Boriack, Appellees**

---

### FROM THE 335TH DISTRICT COURT OF BASTROP COUNTY
### NO. 1146-335, THE HONORABLE REVA TOWSLEE-CORBETT, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

Under a lease with the Droemers, Jimmie Luecke Children Partnership, Ltd. (JLCP) had a right of first refusal to purchase the Droemers' property when the Droemers notified JLCP of a "bona fide offer." Berdoll Investments, LP (Berdoll) made an offer, and the Droemers provided JLCP notice. But JLCP did not exercise its right, claiming that the offer was not "bona fide," and filed suit. The trial court declared that the Berdoll offer was "bona fide" and that JLCP's right was extinguished when it did not exercise the right upon receiving notice. The trial court also awarded the Droemers trial and contingent appellate attorney fees.

On appeal, JLCP challenges the declarations and attorney fee award. As to the trial attorney fees, JLCP asks this Court to suggest a remittitur, and the Droemers agree to the remittitur. We therefore reform the award of trial fees conditioned on the Droemers' filing the remittitur and, as reformed, affirm that portion of the judgment. As to the portions of the

judgment making declarations and awarding appellate fees, we affirm the former but reverse the latter and remand for redetermination of those fees.

**BACKGROUND**

The relevant facts are undisputed. From 2008 through 2018, the Droemers leased 544 acres (the Property) to JLCP but the parties did not renew the lease after 2018. In that situation, the lease grants JLCP a right of first refusal to purchase the Property for the following ten years: "If, during said period of time, [the Droemers] desire[] to sell the subject property and shall have a bona fide offer for the purchase thereof, [JLCP] shall have the option, for a period of ten days after written notification from [the Droemers] to meet the terms and conditions of such offer."

In March 2019, Berdoll offered to buy the Property for $3 million (the Berdoll Offer) using a signed Farm and Ranch Contract promulgated by the Texas Real Estate Commission (the Contract) with an incorporated custom addendum (the Addendum). The Addendum states, "This Contract is being executed by [Berdoll] and delivered to [the Droemers] in order to make a bona fide offer to purchase the Property," and requests acceptance by April 10; otherwise, the Berdoll Offer "will be automatically withdrawn and this Contract shall be void." Within three days of acceptance, Berdoll was required to deliver $30,000 as earnest money.

On appeal, JLCP highlights three provisions that permit Berdoll, "in its sole discretion," to terminate the Contract—receiving $29,000 of its earnest money back with $1,000 paid to the Droemers "as independent contract consideration"—if Berdoll "is not satisfied" with: (1) documents pertaining to the Property's lake; (2) the Property survey, if the Droemers fail to

2

cure any of Berdoll's related objections before closing; or (3) items reflected in the title commitment, if the Droemers fail to cure any of Berdoll's related objections before closing. The Droemers note, however, that Berdoll is not "attempt[ing] to circumvent JLCP's option," as the Addendum provides that Berdoll "will not be obligated to close this transaction" if the Droemers do not provide an agreement signed by JLCP that its right of first refusal is terminated.

By letter, the Droemers notified JLCP of "a good faith offer in the form of an attached Earnest Money Contract from Berdoll" and requested that JLCP "either purchase the land promptly on the same terms" or "execute a recordable Release" of its reserved rights. JLCP responded that the offer is not a "bona fide offer" and that its right of first refusal remains in effect. JCLP did not state a rationale other than that "[i]t is clear from examining the Berdoll [] Offer that it does not constitute a . . . bona fide offer." The Droemers replied that JLCP has waived its right because Berdoll did make a "bona fide offer," referencing that the offer "makes clear and definite terms of purchase," "includes Earnest Money," "was signed," and expressly states that it is being executed "to make a *bona fide offer to purchase* the Property."

JLCP sued the Droemers, seeking attorney fees and a declaratory judgment that the Berdoll Offer is not a "bona fide offer" and that JLCP's right of first refusal is still in effect. The Droemers responded with mirror image counterclaims. The parties filed competing motions for partial summary judgment, including as evidence the lease, the Contract and Addendum, the letters between the parties, and an affidavit of Hal Berdoll (the Berdoll Affidavit). The trial court granted the Droemers' motion, denied JLCP's motion, and declared that the Berdoll Offer is a "bona fide offer" that "trigger[ed] [JLCP's] right of first refusal" and that therefore JLCP's right "is extinguished." After an evidentiary hearing on the Droemers' remaining claim for attorney

3

fees, the trial court signed its final judgment, restating its declaratory judgments and awarding $18,388.08 in trial attorney fees and contingently awarding $25,000 in appellate attorney fees.

JLCP appeals, challenging in four issues: (1) the declaration that the Berdoll Offer constitutes a "bona fide offer," (2) the grant of the Droemers' motion for partial summary judgment, (3) the denial of JLCP's motion for partial summary judgment, and (4) the legal sufficiency of the evidence supporting the attorney fee award.

## DISCUSSION

**Bona Fide Offer**

The first three issues turn on whether the Berdoll Offer was a "bona fide offer." We review summary judgments de novo, taking as true evidence favorable to the nonmovant and indulging reasonable inferences and resolving doubts in the nonmovant's favor. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). Summary judgment is proper if there is no genuine, material fact issue and the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c). If the movant meets this burden, then it shifts to the nonmovant to raise a fact issue; if the movant fails to meet this burden, the motion fails. *Amedisys, Inc. v. Kingwood Home Health Care, LLC*, 437 S.W.3d 507, 511 (Tex. 2014).

In their motion, the Droemers argued that the Berdoll Offer satisfied the case law definition of a bona fide offer: "A *bona fide* offer is one made in good faith which, on acceptance, becomes a valid and binding contract enforceable by any party to it." *Ray v. Lancaster Inv., Grp.*, No. 05-93-01857-CV, 1994 WL 416699, at *5 (Tex. App.—Dallas Aug. 5, 1994, writ denied) (not designated for publication) (citing *Lede v. Aycock*, 630 S.W.2d 669, 674 (Tex. App.—Houston [14th Dist.] 1981, writ ref'd n.r.e); *Jones v. Riley*, 471 S.W.2d 650,

4

659 (Tex. App.—Fort Worth 1971, writ ref'd n.r.e.)); *see also Baldwin v. New*, 736 S.W.2d 148, 152 (Tex. App.—Dallas 1987, writ denied). On appeal, JLCP disputes that the offer was (1) made in good faith and (2) a "firm offer," i.e., a valid and binding contract enforceable by any party to it.[1]

*Good Faith*

Notwithstanding their motion, the Droemers argue on appeal that they did not need to establish good faith: "Neither this Court nor the Texas Supreme Court has ever required an evidentiary showing that an offer is made in 'good faith' to trigger the exercise of a right of first refusal." Regardless of whether the common law requires evidence of good faith, the lease here expressly requires a "bona fide offer." As the lease does not define "bona fide," we presume that the parties intended the term's ordinary meaning and consult dictionaries to discern that meaning. *See Epps v. Fowler*, 351 S.W.3d 862, 866 (Tex. 2011). Dictionaries define "bona fide" to include "made in good faith." *See, e.g.*, *Black's Law Dictionary* (11th ed. 2019) ("Made in good faith; without fraud or deceit."); *The American Heritage Dictionary of the English Language* (5th ed. 2020), https://www.ahdictionary.com/word/search.html?q=bona+fide (last visited Jan. 21, 2022) ("Made or carried out in good faith"; "Latin *bonā fidē*: *bonā*, feminine ablative of *bonus*, good + *fidē*, ablative of *fidēs*, faith."); *Merriam-Webster.com Dictionary*, https://www.merriam-webster.com/dictionary/bona%20fide (last visited Jan. 21, 2022) ("[M]ade in good faith without fraud or deceit."). We therefore conclude that the Droemers had the burden to establish that the Berdoll Offer was made in good faith, as required by the lease's terms.

---

[1] The Droemers' motion also discussed "an arm's length transaction," but JLCP notes that "no Texas case imposes such an element" and that JLCP "does not contend otherwise."

The Droemers defined "good faith offer" in their motion as "one made honestly, sincerely, without intent to defraud or take unconscionable advantage of the grantor, and which is in observance of reasonable commercial standards of fair dealing," citing *Central American Aviation Services, S.A. v. Bell Helicopter Textron, Inc.*, No. 02-06-126-CV, 2007 WL 614132, at *6 (Tex. App.—Fort Worth Mar. 1, 2007, no pet.) (mem. op.) ("'Good faith' is a state of mind consisting in (1) honesty in belief or purpose, (2) faithfulness to one's duty or obligation, (3) observance of reasonable commercial standards of fair dealing in a given trade or business, or (4) absence of intent to defraud or to seek unconscionable advantage." (citing *Black's Law Dictionary* 713 (8th ed. 2004))). *See also Railroad Comm'n v. Gulf Energy Expl. Corp.*, 482 S.W.3d 559, 568 (Tex. 2016) (noting that dictionary definitions of "good faith" "focus overwhelmingly on subjective state of mind"). Applying this definition here,[2] we conclude that the Droemers produced sufficient evidence to establish good faith. The summary judgment evidence included: (1) the Contract listing the $3 million sales price to be paid in cash at closing, requiring $30,000 in earnest money to be paid within three days of the Droemers accepting the Berdoll Offer, and including signatures from Hal Berdoll as president of Berdoll Management LLC—Berdoll's general partner—and three other individuals as "Co-Trustee[s] Under The Berdoll Grandchildren's Trust"; (2) the Addendum stating, "This Contract is being executed by [Berdoll] and delivered to [the Droemers] in order to make a bona fide offer to purchase the Property upon the terms and conditions herein set out"; (3) the letter notifying JLCP that "the Droemer family has received a good faith offer in the form of an attached Earnest Money Contract from Berdoll Investments, L.P. under which it has offered to purchase this

---

[2] Because JLCP did not challenge this definition below and does not challenge it on appeal, we assume without deciding that this definition of "good faith" applies in this context.

6

544 acres for $3,000,000.00 dollars but has required a Release from [JLCP] of its First Rights of Refusal regarding this land"; and (4) the Berdoll Affidavit stating:

> I made the purchase offer of the 544-acre tract of land, located in Bastrop County, Texas and which is the subject of this case, in good faith. The only significant condition I had as part of the offer was that the option to purchase the property and the option to lease the property, both of which exist or existed with [JLCP] was extinguished as I did not want to compete on a purchase and have to defend this type of lawsuit.
>
> All other terms and conditions have been reviewed by me and I am willing to go forward with the purchase. After the termination of the option to purchase and the option to lease, the only condition that remains is to conduct a survey of the property which will only be done prior to closing.

*Cf. Electric Reliability Council of Tex., Inc. v. Met Ctr. Partners-4, Ltd.*, No. 03-04-00109-CV, 2005 WL 2312710, at *10–11 (Tex. App.—Austin Sept. 22, 2005, no pet.) (mem. op.) (concluding testimonial evidence that "letter was a serious offer made in good faith and that [offeror] intended to purchase the building as long as the due diligence investigation 'panned out'" was factually sufficient evidence to support finding of bona fide offer). Because the Droemers satisfied their burden, the burden shifted to JLCP to raise an issue of fact as to whether the Berdoll Offer was made in good faith. *See Amedisys*, 437 S.W.3d at 511.

In response, JLCP did not object to the Droemers' summary judgment evidence or present controverting evidence; in fact, JLCP did not even dispute or challenge the good faith of the Berdoll Offer in the underlying proceedings.[3] Thus, because JLCP failed to present any

---

[3] In both its response to the Droemers' motion for summary judgment and in its petition, JLCP focused entirely on the fact that the Berdoll Offer had "conditions and contingencies," without challenging the good faith of the offer. In its response, JLCP argued: "The bottom line is that the [Droemers] have failed to cite this Court to a single case holding that an offer to purchase can still be considered a 'bona fide offer' under Texas law even though the offer contains conditions and contingencies." In its petition, JLCP claimed: "The Berdoll Purchase Offer contains certain conditions and contingencies that place it within the buyer's power to

7

issues as to good faith in its response or answer, JLCP is limited on appeal to arguing the legal sufficiency of the grounds for summary judgment presented by the Droemers in their motion. *See Williamson v. State*, No. 03-11-00786-CV, 2013 WL 3336869, at *2 (Tex. App.—Austin June 26, 2013, pet. denied) (mem. op.) (citing *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 343 (Tex. 1993)).

JLCP argues that "[t]he Droemers neither identified nor cited any evidence supporting these allegations" in their motion and that "[h]aving cited no evidence of good faith in the operative portion of their motion, the Droemers did not satisfy their burden to conclusively prove that fact and thus were not entitled to summary judgment."[4] But "[w]hen a nonmovant believes a motion for summary judgment is unclear, ambiguous, or lacks specificity, it must file special exceptions" and "must then obtain a ruling on the special exceptions to preserve the issue for appellate review." *Regional Specialty Clinic, P.A. v. S.A. Randle & Assocs.*, 625 S.W.3d 895, 901 (Tex. App.—Houston [14th Dist.] 2021, no pet.) (evaluating special exceptions for failure to include "specific citations to summary-judgment evidence supporting his traditional summary-judgment motion"); *see also Hoffman v. Mena*, No. 03-19-00409-CV, 2021 WL 2460637, at *3

---

decide, after further investigations into various conditions of the property, whether or not the buyer would then be required to close the purchase of the property under the terms of that contract. . . . Accordingly, the Berdoll Purchase Offer does not constitute, under Texas law, a ***bona fide offer for the purchase of the Property*** as is required by the terms of the Lease[.]"

[4] JLCP also argues that "[t]he 'law' recited in the Droemers' motion to support the good faith element is not sufficiently supported." But it is undisputed that the Droemers raised the *issue* or the *ground* that they were entitled to summary judgment because, in part, the Berdoll Offer constituted a good faith offer. And "parties on appeal need not always 'rely on precisely the same case law or statutory subpart' on which they relied below" and "may 'construct new *arguments* in support of issues' that were raised." *Li v. Pemberton Park Cmty. Ass'n*, 631 S.W.3d 701, 704 (Tex. 2021) (quoting *Adams v. Starside Custom Builders, LLC*, 547 S.W.3d 890, 896 (Tex. 2018); *Greene v. Farmers Ins. Exch.*, 446 S.W.3d 761, 764 n.4 (Tex. 2014)).

n.3 (Tex. App.—Austin June 17, 2021, no pet.) (mem. op.) ("'[T]o attack a summary-judgment motion on specificity grounds, the nonmovant must specially except' and 'obtain a ruling on the special exception to preserve the issue for appeal.'" (quoting *Vodicka v. Lahr*, No. 03-10-00126-CV, 2012 WL 2075713, at \*4 (Tex. App.—Austin June 6, 2012, no pet.) (mem. op.))). Moreover, although Rule 166a(c) states that "[t]he motion for summary judgment shall state the *specific grounds* therefor," Tex. R. Civ. P. 166a(c) (emphasis added); *see also McConnell*, 858 S.W.2d at 341 ("A motion must stand or fall on the grounds expressly presented in the motion."), we have previously noted that the rule "contains no requirement that the *evidence* be referenced more specifically than being incorporated into the motion," *Dear v. City of Irving*, 902 S.W.2d 731, 735 (Tex. App.—Austin 1995, writ denied) (emphasis added); *see also Hinojosa v. Columbia/St. David's Healthcare Sys., L.P.*, 106 S.W.3d 380, 387 (Tex. App.—Austin 2003, no pet.) ("Evidence attached to these motions for the court to consider in determining the propriety of summary judgment need not be set out specifically," and "[a] non-movant need not set out the exact evidence on which it relies or explain with specificity how this evidence supports the issues it raises."), especially when, as here, the summary judgment record is not voluminous, *see, e.g.*, *Hintz v. Lowe*, No. 14-03-00979-CV, 2004 WL 2359260, at \*3 (Tex. App.—Houston [14th Dist.] Oct. 21, 2004, no pet.) (mem. op.) (distinguishing *Dear* and *Hinojosa* because "[t]hese cases do not appear to involve voluminous records").[5] Finally, the

---

[5] The summary judgment record—the Droemers' motion for partial summary judgment, JLCP's response and its own motion for partial summary judgment, the Droemers' reply, and all the summary judgment evidence—consists of less than a hundred pages. JLCP cites cases for the proposition that the Droemers had to "specifically identify the supporting proof they wanted the trial court to consider as conclusively establishing each element," *see Pressley v. Casar*, 567 S.W.3d 28, 40 (Tex. App.—Austin 2016) (citing *Nguyen v. Allstate Ins.*, 404 S.W.3d 770, 776 (Tex. App.—Dallas 2013, pet. denied)), *rev'd on other grounds*, 567 S.W.3d 327 (Tex. 2019) (per curiam); *Arredondo v. Rodriguez*, 198 S.W.3d 236, 238-39 (Tex. App.—San Antonio

9

Droemers' motion specifically identifies the evidence the motion was relying on to establish "good faith," even if specific citations to the summary judgment record were lacking in the analysis:  the motion lists the evidence attached "[t]o support the facts in this Motion"; expressly incorporates the listed evidence by reference; states that "[t]he Berdoll purchase offer is a cash offer, made without any need for financing, for the property and was made to Defendants honestly and genuinely" and was "made without intent to defraud or take advantage of Defendants or Plaintiff and Berdoll acted in observance of reasonable commercial standards of fair dealing"; and states that "[f]urther evidence that the conditions placed in the Berdoll offer are commercially reasonable and imposed in good faith can be found in the [Berdoll A]ffidavit." We conclude that JLCP's argument is unavailing.

JLCP also argues that the Berdoll Affidavit is conclusory and supplies "no underlying facts to support the assertion that the Berdoll [] [O]ffer was made in good faith." Although JLCP did not object to the affidavit as conclusory, this challenge may be raised for the first time on appeal. *See Leander Indep. Sch. Dist. v. Office of Att'y Gen.*, No. 03-18-00243-CV, 2018 WL 6581523, at *5 (Tex. App.—Austin Dec. 14, 2018, no pet.) (mem. op.) (holding that conclusory statements in affidavit are substantively defective and that issue is not waived by failure to obtain ruling from trial court).  "A complaint that summary-judgment affidavit testimony is 'conclusory' is an assertion that the testimony is incompetent summary-judgment evidence because it consists of factual or legal conclusions or opinions that are not supported by facts." *Sprayberry v. Siesta MHC Income Partners, L.P.*, No. 03-08-00649-CV, 2010 WL 1404598, at *4 (Tex. App.—Austin Apr. 8, 2010, no pet.) (mem. op.).  But Hal Berdoll

2006, no pet.), but these cases involved "voluminous summary judgment evidence" and are inapposite here.

supplied "underlying facts" supporting his statement that the offer was made in "good faith": he explained that his "only significant condition" for the Berdoll Offer was that JLCP's right of first refusal first be extinguished as he "did not want to compete on a purchase and have to defend this type of lawsuit," demonstrating that the offer was not an attempt to defraud or circumvent JLCP's right of first refusal, and that he was "willing to go forward with the purchase."[6]

Accordingly, we conclude that the Berdoll Afffidavit, when combined with the other summary judgment evidence, satisfied the Droemers' burden to show that the Berdoll Offer was made in good faith and that JLCP did not produce evidence in response after the burden shifted to raise a fact issue as to good faith. *Cf. Met Ctr. Partners-4*, 2005 WL 2312710, at *9–11 (describing sufficient evidence of good faith); *see also Amedisys*, 437 S.W.3d at 517 (noting that email and letter constituted prima facie evidence of clear intent to accept settlement offer, that evidence satisfied "initial summary judgment burden," that burden shifted to nonmovant to produce evidence raising issue of fact, and that because movant's evidence was uncontroverted, movant conclusively established through summary judgment evidence that it accepted settlement offer); *Kerlin v. Arias*, 274 S.W.3d 666, 668 (Tex. 2008) (per curiam) (upholding summary judgment in favor of party who produced prima facie evidence of valid deed and noting that party did not have burden to prove age or marital status of grantor because opposing party did not produce evidence raising fact question on those issues); *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995) ("Once the defendant produces sufficient

---

[6] JLCP also argues that the Berdoll Affidavit "fails to establish the connection between Hal Berdoll's position as president of Berdoll Management L.L.C. and his authority to act on behalf of Berdoll Investments L.P." But Hal Berdoll explained that he is "the President of Berdoll Management L.L.C., an entity which is the General Partner of Berdoll Investments L.P.," and his signature is included as the primary signature on the signature page of the Berdoll Offer.

11

evidence to establish the right to summary judgment, the plaintiff must present evidence sufficient to raise a fact issue.").

*Firm Offer*

In its response to the Droemers' motion, JLCP argued that the Berdoll Offer was not a bona fide offer because it gave Berdoll "a unilateral and subjective right to terminate the contract based upon their 'satisfaction' with various documents, surveys, and environmental assessments" and that "these conditions and contingencies would allow the Berdolls to back-out of the contract at any time, meaning that the mere act of signing the offer would not create a[n] accepted, binding contract," citing *Baldwin*, 736 S.W.2d at 152, and *Jones*, 471 S.W.2d at 659.[7]

The offers in *Jones* and *Baldwin*, however, are distinguishable from the Berdoll Offer. In *Jones*, our sister court considered whether the following letter offer constituted a "bona fide offer":

> It is our understanding that you have a tract of land . . . . [and] that there is a $126,000 note at 7% Interest on this property. In the event you are interested in selling this property, we are willing to take this $126,000 note and pay you an additional $95,000 for this property. This offer is, of course, contingent on verification of the details of the loan and verification of the extent and facts concerning the property title. If you are interested in this, please contact me . . . .

471 S.W.2d at 658. The court held that the offer "was no more than an offer or invitation to enter into negotiations" and "did not legally constitute such an offer that, if accepted, a binding contract would thereupon result" because "[t]he conditions or contingences . . . placed it within [the offeror's] power to thereafter decide, after a later investigation, whether or not the details of

---

[7] JLCP also cites *Lede v. Aycock*, 630 S.W.2d 669, 674 (Tex. App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.). But, as relevant here, the *Lede* court merely concluded that an instruction defining "bona fide offer" was proper as it "almost tracks the language of *Jones*." *Id.*

the loan and extent and facts concerning the property title were satisfactory to [the offeror] and whether or not they would then agree to be bound by contract." *Id.* at 659.

In *Baldwin*, our sister court considered proposals that contained two conditions: (1) the purchaser was provided sixty days to perform engineering studies "acceptable to Purchaser *in his sole discretion*" and at the end of the sixty days, was required either to send notice that the property is unacceptable "in the exercise of his *sole discretion*" or to deposit $25,000 in earnest money; and (2) even if the purchaser decided to deposit the earnest money "after his 'free look,'" seller's "sole remedy" was to have the earnest money paid as liquidated damages if the purchaser failed "to consummate this Contract for any reason." 736 S.W.2d at 150. The appellant argued, and the *Baldwin* court agreed, "that a promise conditional on personal satisfaction can form the basis of an enforceable contract under proper conditions." *Id.* (citing *Black Lake Pipe Line Co. v. Union Constr. Co.*, 538 S.W.2d 80, 88 (Tex. 1976), *overruled on other grounds by Sterner v. Marathon Oil Co.*, 767 S.W.2d 686 (Tex. 1989)). But the *Baldwin* court concluded that the proposals at issue constituted "a true 'free look' contract," "not offers, which, upon acceptance," "became binding contracts" because:

> The proposals provided that the buyer was to have sixty days to examine the property and obtain engineering studies. At the end of the sixty days, the buyer could, *in his sole discretion*, decide not to buy the property. The seller would have *no remedy* at all against him at this point.

*Id.* And even if the buyer were to default after deciding to buy and putting down earnest money, the seller's sole remedy would be limited by an express provision "which limited the seller's remedy to retention of the earnest money." *Id.*

Here, in contrast, the Berdoll Offer required that earnest money be delivered to the title company within three days after the effective date. Thus, it was not a "true 'free look'

contract" like the one in *Baldwin* or a mere "invitation to enter into negotiations" like the one in *Jones*. *See Ray*, 1994 WL 416699, at \*4 (noting that "buyer in *Baldwin* had no risk or obligation until he tendered his earnest money *after* the expiration of the 'free look' period"; that "the contract, apparently, was silent regarding what would happen if the buyer refused to take any action after the 'free look' period, there was no money at risk"; and that "[t]he buyer's 'free look,' therefore, was entirely risk-free"). Moreover, $1,000 of the earnest money was not refundable and was paid to the Droemers "as independent contract consideration" if Berdoll determined to exercise its discretion to terminate the Contract. And the reasons to exercise that discretion were specifically limited to dissatisfaction with the lake documents, survey, or title commitment; as to the latter two reasons, the Contract required Berdoll to provide written objections with an opportunity for the Droemers to cure before Berdoll could exercise its right to terminate.[8] Although the Contract provided that the $1,000 earnest money be paid to the

---

[8] As the *Baldwin* court noted, a satisfaction clause may be enforceable under proper conditions. *Baldwin v. New*, 736 S.W.2d 148, 150 (Tex. App.—Dallas 1987, writ denied) ("[A] promise conditional on personal satisfaction can form the basis of an enforceable contract under proper conditions." (citing *Black Lake Pipe Line Co. v. Union Constr. Co.*, 538 S.W.2d 80, 88 (Tex. 1976), *overruled on other grounds by Sterner v. Marathon Oil Co.*, 767 S.W.2d 686 (Tex. 1989))). And Texas courts have concluded that "in its sole discretion" language is not determinative of whether a satisfaction clause is enforceable. *See, e.g.*, *Shoe-Bar Ranch, Inc. v. Preferred Proppants, LLC*, No. MO:17-CV-00210-DC, 2018 WL 8244907, at \*1, \*3–9 (W.D. Tex. Mar. 20, 2018) (collecting cases, examining legal principles relating to enforceability of contracts using "in its sole discretion" language, and concluding that clause allowing Buyer "in its sole discretion" to determine whether "Seller has good title" is "an enforceable satisfaction clause"); *EM Bldg. Contractors Servs., LLC v. Byrd Bldg. Servs., LLC*, No. 05-19-00153-CV, 2020 WL 4592791, at \*11 (Tex. App.—Dallas Aug. 11, 2020, no pet.) (mem. op.) (rejecting argument that term obligating party to submit insurance "acceptable to" other party "is subjective and amounts to no contract term at all" because when performance is conditioned on one party's judgment, courts imply requirement that such judgment is exercised in good faith); *Nissan N. Am., Inc. v. Texas Dep't of Motor Vehicles*, 592 S.W.3d 480, 496 n.16 (Tex. App.—Texarkana 2019, no pet.) (noting that when contracts provide one party with sole discretion to determine standard by which performance is evaluated courts generally apply objective good faith test rather than invalidate such agreements as illusory); *cf. In re Eubanks*, 66 F.3d 321,

14

Droemers if Berdoll exercised its discretion to terminate the Contract based on its dissatisfaction with the survey, lake documents, or title commitment, there was no express clause limiting the earnest money recovery as the "sole remedy" for Berdoll's failure to consummate the contract "for any reason," as in the *Baldwin* contract; in fact, the Contract expressly provided that the Droemers may "enforce specific performance, seek such other relief as may be provided by law, or both" if Berdoll "fails to comply with this contract." *See id.* at *5 n.4 (noting that although purported contract will be construed as option contract if it limits seller's remedy for breach to earnest money in deposit, "[t]his contract, however, expressly did not limit the remedy available to appellee, but provided for either liquidated damages in the form of the earnest money, a 'suit for damages,' or 'specific performance'"). Thus, we conclude that the offers in *Jones* and *Baldwin* are distinguishable from the Berdoll Offer.[9]

In sum, we conclude that JLCP has not demonstrated that the trial court erred in granting the Droemers' motion for partial summary judgment and in denying JLCP's motion. Accordingly, we overrule JLCP's first three issues.

**Attorney Fees**

On appeal, JLCP challenges the $18,388.08 award for trial attorney fees, but admits that "[t]he evidence is sufficient to support an award of $14,242.67" and "asks the Court to suggest that the Droemers remit the trial-attorney fee award to $14,242.67." The Droemers state that they "agree with JLCP that remand is unnecessary"; "will accept the Court's remittitur

---

1995 WL 535091, at *1 (5th Cir. 1995) (unpublished) (describing distinction in Texas law between bilateral contract of sale and option contract).

[9] Moreover, the lease expressly contemplated that a bona fide offer could have "conditions" attached to it by providing JLCP with "the option . . . to meet the terms *and conditions* of such offer." (Emphasis added)

15

suggestion for a trial attorney-fee award of $14,242.67"; and "intend to timely file a remittitur in compliance" if "the Court suggests a remittitur of this amount." Accordingly, we reform this portion of the district court's judgment to reflect an award of $14,242.67 for trial attorney fees and, as reformed, affirm the award of trial attorney fees conditioned on the Droemers' filing this remittitur within 30 days of the date of this opinion. *See* Tex. R. App. P. 46.3; *Golden Corral Corp. v. Noble Austin Apartments L.L.C.*, No. 03-19-00463-CV, 2021 WL 2878565, at *11 (Tex. App.—Austin July 9, 2021, no pet.) (mem. op.).

JLCP also challenges the contingent award of appellate attorney fees. At the hearing conducted in December 2019, the Droemers' counsel testified as follows:

> As to appellate fees, Your Honor, I said if there is an unsuccessful appeal to the Court of Appeals favorable to my clients, then we would receive the sum of fifteen—should receive the sum of $15,000. If it goes on to the Supreme Court, it's $10,000. I'm very familiar with that and I have four cases on appeal at this particular point in time. That's been the testimony, either by the other side or myself, in all of those cases and I think it is considered pretty much the norm as far as appellate purposes in the Central Texas area.

In the context of the request for trial attorney fees, counsel testified that when he was hired to represent the Droemers, he "explained to them what [his firm's] fees were and that [he] believed them to be fair and reasonable," and that his "fee was at the rate of $350 an hour." The testimony as to appellate attorney fees and as to his hourly rate was uncontroverted.

At the time of the hearing, we had recently issued an opinion concluding that similar testimony regarding appellate attorney fees and a $350 hourly rate for trial work was legally sufficient to support the same $25,000 contingent award. *See Sheen v. Sheen*, No. 03-18-00358-CV, 2019 WL 2554570, at *5 (Tex. App.—Austin June 21, 2019, no pet.) (mem. op.) (concluding that uncontroverted testimony of $350 hourly rate for trial work and

16

request for $25,000 in contingent appellate fees is legally sufficient evidence of reasonable appellate fees, notwithstanding that "[c]ounsel did not explicitly estimate a reasonable number of hours to be spent defending an appeal," given presumption that court "evaluated counsel's testimony against the court's knowledge of the customary fees for these legal services and the entire record, and the parties' relative success"). Applying *Sheen*, the Droemers' evidence would be legally sufficient to support the award.

After JLCP filed its notice of appeal, however, the Texas Supreme Court expressly addressed what constitutes legally sufficient evidence for a contingent award of appellate attorney fees. *See Yowell v. Granite Operating Co.*, 620 S.W.3d 335, 355 (Tex. 2020). The *Yowell* Court explained that "with respect to contingent appellate fees, which have not yet been incurred and thus must be projected based on expert opinion testimony," "[t]here is no certainty regarding who will represent the appellee in the appellate courts, what counsel's hourly rate(s) will be, or what services will be necessary to ensure appropriate representation in light of the issues the appellant chooses to raise." *Id.* But the *Yowell* Court also held that "this uncertainty does not excuse a party seeking to recover contingent appellate fees from the need to provide opinion testimony about the services it reasonably believes will be necessary to defend the appeal and a reasonable hourly rate for those services." *Id.* And our sister courts have reversed contingent appellate fee awards for failure to meet this *Yowell* standard. *See, e.g.*, *Milliken v. Turoff*, No. 14-19-00761-CV, 2021 WL 2156224, at *3 (Tex. App.—Houston [14th Dist.] May 27, 2021, no pet.) (mem. op.); *Porter v. Porter*, No. 04-20-00229-CV, 2021 WL 2117923, at *4–5 (Tex. App.—San Antonio May 26, 2021, no pet.) (mem. op.); *Aguilar v. Wells Fargo Bank, N.A.*, No. 07-20-00036-CV, 2021 WL 317641, at *6 (Tex. App.—Amarillo Jan. 29, 2021, no pet.) (mem. op.); *Fiamma Statler, LP v. Challis*, No. 02-18-00374-CV,

17

2020 WL 6334470, at \*19 (Tex. App.—Fort Worth Oct. 29, 2020, pet. denied) (mem. op.); *KBIDC Invs., LLC v. Zuru Toys Inc.*, No. 05-19-00159-CV, 2020 WL 5988014, at \*24 (Tex. App.—Dallas Oct. 9, 2020, pet. filed); *see also U.S. Bank Nat'l Ass'n v. Lamell*, No. CV H-19-2402, 2021 WL 4440179, at \*3 (S.D. Tex. May 20, 2021). Because the Droemers did not provide testimony about "*the services* [they] reasonably believe[] will be necessary to defend the appeal" or "a reasonable hourly rate *for those services*," *see Yowell*, 620 S.W.3d at 355 (emphases added), we conclude that legally insufficient evidence supported the contingent award.

JLCP requests that if we conclude the evidence is legally insufficient, we "render judgment that the Droemers take nothing on their request for appellate fees," citing *Statewide Hydraulics, Inc. v. EZ Management GP*, No. 14-13-01049-CV, 2015 WL 167160, at \*10 (Tex. App.—Houston [14th Dist.] Jan. 13, 2015, no pet.) (mem. op.), *City of Laredo v. Negrete*, No. 04-08-00737-CV, 2010 WL 454921, at \*10 (Tex. App.—San Antonio Feb. 10, 2010, pet. denied) (mem. op.), and *Hawkins v. Walker*, 233 S.W.3d 380, 399, 403 (Tex. App.—Fort Worth 2007, no pet.). However, our sister courts that have applied *Yowell* to reverse a contingent award of appellate attorney fees have remanded for redetermination of those fees rather than render a take nothing judgment. *See Milliken*, 2021 WL 2156224, at \*3; *Porter*, 2021 WL 2117923, at \*5; *Fiamma Statler*, 2020 WL 6334470, at \*19; *KBIDC Invs.*, 2020 WL 5988014, at \*24; *cf. Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 506 (Tex. 2019) (remanding for redetermination of fees after concluding evidence is legally insufficient to support attorney fee award).[10] Moreover, "[r]emand is particularly appropriate where the losing

---

[10] In *Aguilar v. Wells Fargo Bank, N.A.*, our sister court also reversed the contingent award and remanded but did so based on factual, not legal, insufficiency of the evidence.

party may have presented his or her case in reliance on controlling precedent that was subsequently overruled." *Boyles v. Kerr*, 855 S.W.2d 593, 603 (Tex. 1993); *see also* Tex. R. App. P. 43.3 ("When reversing a trial court's judgment, the court must render the judgment that the trial court should have rendered, except when . . . the interests of justice require a remand for another trial."). We therefore remand the issue of appellate attorney fees for redetermination.

## CONCLUSION

For these reasons, we reform the trial court's judgment to reflect an award of $14,242.67 for trial attorney fees conditioned on the Droemers' filing the remittitur within 30 days of the date of this opinion. As reformed, we affirm the trial court's declaratory judgment and award of trial fees, reverse the trial court's contingent award of appellate fees, and remand for redetermination of those fees.

_____

Melissa Goodwin, Justice

Before Justices Goodwin, Triana, and Smith

Reformed and, as Reformed, Affirmed in Part; Reversed and Remanded in Part

Filed: January 27, 2022

---

No. 07-20-00036-CV, 2021 WL 317641, at *6 (Tex. App.—Amarillo Jan. 29, 2021, no pet.) (mem. op.).